IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JEROME SKOCHIN, SUSAN SKOCHIN, and LARRY HUBER, individually, and on behalf of all others similarly situated,<br><br>    *Plaintiffs*,<br><br>v.<br><br>GENWORTH LIFE INSURANCE COMPANY and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK,<br><br>    *Defendants.* | Civil Action No.: 3:19-CV-49-REP |

### REPLY BRIEF IN SUPPORT OF MOTION FOR TEMPORARY STAY OF PROCEEDINGS

In light of the COVID-19 virus emergency, the Indiana Department of Insurance (the "Department") seeks to intervene and has moved for a temporary stay of proceedings (the "Motion") (ECF No. 108) in this case. The class representative plaintiffs ("Plaintiffs"), have filed a response to the Motion in which they oppose the entry of a temporary stay (ECF No. 113). As discussed in greater detail below, the Court should grant the Motion and temporarily stay these proceedings, including the deadlines relating to the proposed class settlement, until after the COVID -19 virus emergency has subsided, or for such time that the Court deems appropriate to accommodate fair treatment to the unnamed class members.

I.      **INTRODUCTION**

Because of the COVID-19 virus emergency, for the first time in the history of the United States, all 50 states, the U.S. Virgin Islands, the Northern Mariana Islands, Washington D.C., Guam, and Puerto Rico are all under a state of emergency and a federal disaster declaration.[1] Most states have issued orders limiting or prohibiting the daily activities of residents, including travel, meetings with others, and work. People are largely confined to their homes, and are presently worried about their health and safety. They are also experiencing economic challenges, and in some cases, they are worried about the ability to feed and provide for themselves and their families in the immediate future.

The federal government, and all but three of the states that have an individual income tax, have acknowledged that the national COVID-19 emergency puts a severe strain on the ability of people to take important actions that may require consultation with legal and financial professionals, and therefore, have delayed the deadline to make both tax filings and tax payments for at least three months, to July 15, 2020 or later.[2]

Most of the state and federal courts have also recognized the severe impact of the national emergency, and have entered orders delaying many proceedings and court-imposed deadlines, particularly in civil cases.

As a result, it is almost universally acknowledged that imposing deadlines on people to act on important matters is not fair or reasonable at this time, especially when the deadlines can easily

---

[1] https://thehill.com/policy/healthcare/public-global-health/492433-all-50-states-under-disaster-declaration-for-first

[2] "As of April 1, [2020] all states with individual income taxes have made changes to tax filing and/or payment deadlines, with all but Idaho, Mississippi, and Virginia postponing both filing and payment obligations until July 15th, in line with the federal government." https://taxfoundation.org/states-postpone-tax-day/

be held off for a few months until after the COVID-19 emergency subsides. Special consideration should be given to allow additional time for people to take action during this emergency. People have enough to worry about and to occupy their immediate attention during a pandemic. Forcing them to make important financial decisions, and take important actions, which they may not be in a position to do during this national emergency would not be fair.

The Plaintiffs disagree. They view the current national emergency as nothing significant or fundamentally out of the ordinary for the unnamed class members. They think that the deadlines for taking action that were approved months ago, before the COVID-19 emergency arose, should still be rigidly adhered to, even in the face of these unprecedented circumstances. They raise a number of arguments which suggest that there is no measurable harm that will result from denying the Motion, and which suggest that entering a stay would itself be somehow harmful to the unnamed class members. The Court should reject the Plaintiffs' arguments.

## II.  DISCUSSION

### A.  The Court has discretion to temporarily stay these proceedings to ensure fair treatment to the unnamed class members.

The unnamed class members have the right to fair treatment in this case. The Court has the discretion to determine whether fairness to the unnamed class members warrants a temporary stay of the proceedings. The power to grant a stay is "a power inherent in the courts 'under their general equity powers and in the efficient management of their dockets.'" *PBM Nutritionals, LLC v. Dornoch Ltd.*, 667 F. Supp. 2d 621, 631 (E.D. Va. 2009) (quoting *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983)). When deciding whether to grant a motion to stay, "a court is given wide discretion to 'weigh competing interests and maintain an even balance.'" *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

In this case, unprecedented hardship is present and affecting people in all 50 states, the U.S. Virgin Islands, the Northern Mariana Islands, Washington D.C., Guam and Puerto Rico. A nationwide emergency has been declared by the federal government. The states and territories have declared their own state of emergency, and a disaster declaration has been made for all 50 states, the U.S. Virgin Islands, the Northern Mariana Islands, Washington D.C., Guam and Puerto Rico, for the first time in history. The magnitude of the COVID-19 emergency is unprecedented. The lives of all people living in the United States and its territories, including all of the class members, are being adversely affected.

If no temporary stay is granted in this case, the unnamed class members will be harmed by the imposition of unfair deadlines to opt out or object to the proposed settlement. They will be unfairly limited in their ability to understand the proposed terms of a complex settlement. They will be unreasonably hindered in their ability to obtain financial and legal advice in connection with complying with the deadlines to opt out of the proposed settlement or object to the proposed settlement.

When weighing the interests of granting a temporary stay of a few months to protect the unnamed class members, and the interests of pushing ahead now with the same deadlines and dates that were established prior to the COVID-19 emergency, the Court should find in favor of a temporary stay to ensure fair treatment to the unnamed class members. The Plaintiffs' arguments do not outweigh the interests of promoting fundamental fairness to the unnamed class members during a time of national emergency.

> **B.     Whether to opt out or object to the settlement are significant decisions that will require the class members to carefully consider the proposed settlement benefit options.**

The Plaintiffs argue that the class notice sets proper deadlines which involve very simple issues that are neither significant nor complex. They contend that there really is not much for the class members to do or decide now or prior to the final approval hearing in this case. As a result, the Plaintiffs claim there is no compelling reason to temporarily stay the deadlines or continue the hearing. The Plaintiffs admit, however, that the "settlement election *decisions* admittedly raise complex issues each Class member will eventually have to evaluate once the settlement is approved," but claim that now, '[a]t this stage, though, a potential Class member need only decide whether to opt-out or object to the settlement." Pls.' Opp'n Br. at 5 (emphasis in original) (ECF No. 113).

The Plaintiffs are incorrect. In order to fully assess the merits of staying in the class, opting out, or objecting to the terms of settlement, each class member must necessarily understand the benefits of the proposed settlement that they might receive. Therefore, they must be given a full and fair opportunity to carefully and thoroughly study the settlement options and understand the settlement election decision they would be given if the proposed settlement is approved. The issues that the Plaintiffs admit are complex issues are the issues that the unnamed class members must take into consideration now in order to make informed decisions whether to opt-out or object to the settlement. For example, unnamed class members would have to understand and calculate the potentially significant long term financial difference between a current cash payment and reduced paid up policy benefits on the one hand, and the total value of benefits if they were to go into long term care under their current policy terms on the other hand. This difference in potential benefits could be hundreds of thousands of dollars over the course of their lives. This should be taken into account in making a decision to opt out of the settlement or not. There probably are few

class members prepared to recognize this kind of issue, or make the varying calculations necessary to evaluate it under different potential scenarios, without assistance.

Class members cannot make informed decisions whether to opt-out of the settlement or object to the terms of settlement if they do not fully understand the settlement terms and do not understand the relative merits, or lack of merits, of the various settlement options they will be given if they stay in the settlement class and do not object. They need to be able to decide if the exchange of a release of their claims is warranted. To do so, they must be allowed to make an informed assessment of the consideration that will be given in exchange for their release.

The Plaintiffs admit that class members' decisions regarding the settlement options involve complex issues. But, they ask the Court to conclude that the class members do not need to have an understanding of those complex issues at this time. Contrary to the Plaintiffs' argument, each and every class member who is given a deadline to opt-out or object at this time has to be given a fair opportunity to understand all of the terms of settlement, and may very well need to obtain the advice of financial and legal advisors of their own choosing to do so. They need to know what the settlement terms mean financially, in order to decide whether to opt out of the settlement terms. The time to make those important, binding decisions, and to understand the complex issues, is before the deadline to opt-out or object expires, not after. The deadline should be extended to after the national emergency from the pandemic subsides.

The Plaintiffs also suggest that even if class members are distracted or are unable to make a fully-informed, timely decision over whether to opt-out or object to the settlement, there is no need for the Court to be concerned. The Plaintiffs argue that the result of a class member missing the deadline to act will be the class member having a settlement benefit and releasing Genworth. Pls.' Opp'n Br. at 5 (ECF No. 113). Whether to release claims is a significant decision. It should

only be made after a class member has been given a fair chance to understand the impact of the decision to not opt-out, to not object, and to voluntarily release one's claims. Although the Plaintiffs characterize the act of releasing claims due to missing a deadline to opt-out and/or object as a "small penalty for inaction," a potential penalty may actually be significant under the analysis of long term financial effects, as noted above. The decision of how to evaluate the significance of any relative penalty or benefit belongs to the individual unnamed class members. It should be an informed decision, made by each individual class member, not by the named class representatives who have already decided that they favor the proposed settlement terms in exchange for giving a release.

### C. The Plaintiffs incorrectly assume that the unnamed class members have plenty of "idle time" to decide whether to opt-out of or object to the class settlement.

Plaintiffs incorrectly argue that as a result of the national COVID-19 emergency the class members will have plenty of "idle time" and little else to do than study the proposed settlement. Pls.' Opp'n Br. at 6 (ECF No. 113). Therefore, the Plaintiffs argue, unnamed class members can easily be expected to focus their attention on assessing the merits of the proposed settlement and taking informed action by the deadline to opt-out or object. The Plaintiffs argue that the class members are not at any disadvantage due to having the deadlines to opt-out or object imposed on them during an unprecedented national emergency.

The Plaintiffs' argument ignores reality. A pandemic is not a vacation. Many people, including members of the class, are facing very serious issues right now. They are worried about surviving, both from a health standpoint and from an economic standpoint. No doubt, there are many who are scrambling to juggle the incoming bills and wondering how they will make ends meet while out of work and while investments have unexpectedly dropped in value. Some may

have small businesses and other income generating investments that they have spent a lifetime building, and are presently trying to decide how to chart a path for their income stream to survive during an extended shut down of the economy. Others may also be ill or caring for those who are ill. Others may be hospitalized. The reality is that few of the class members are likely to be sitting around "idle," with nothing important to occupy their attention, as suggested by the Plaintiffs.

The Plaintiffs also ignore the fact that long-term care policyholders are typically much older than the average American. Based on the data provided to the Department by Genworth, the overwhelming majority of policyholders affected by the settlement are age 70 or older. *See* Declaration of Karl Knable (attached as Exhibit 1). As a result, they are in the age group that is the most vulnerable to having severe, life-threatening illnesses requiring hospitalization if they contract the COVID-19 virus. They must be extremely careful to avoid any chance of becoming ill. Persons in high risk groups are the most isolated right now. They must avoid all face to face interactions with family and friends. Many are likely suffering from increased depression and anxiety due to their increased isolation. *See* Richard Armitage and Laura B. Nellums, "*COVID-19 and the consequences of isolating the elderly,"* THE LANCET (published online March 19, 2020).[3] Some may not even be opening mail, to avoid risk of infection.

Pushing forward with case deadlines now, during the COVID-19 national emergency, is particularly unfair to the unnamed class members in this case because they are among the people who are the most severely affected by the pandemic.

---

[3] https://www.thelancet.com/action/showPdf?pii=S2468-2667%2820%2930061-X

      **D.    Class members are limited in their ability to consult directly with professional advisors of their selection.**

According to the Plaintiffs, the Court should not be concerned about the fairness of pushing forward with deadlines at this time because the ability for class members to confer with financial and legal advisors about the complex issues raised by the settlement will not be affected by the COVID-19 emergency. The Plaintiffs contend that there is no need for the class members to have face to face meetings with professional advisors, and that the class members can easily obtain any professional advice about whether to opt-out or object to the settlement over the phone, via fax, over the internet, and by email. Pls.' Opp'n Br. at 6 (ECF No. 113).

The Plaintiffs argue that the ability to communicate via electronic means during the COVID-19 emergency is established by the fact that the Department is itself making special efforts to have Department employees continue to work remotely and continue to perform the work of the Department through email and telephone. The Plaintiffs also note that in Indiana financial and legal advisors are allowed to remain working during the COVID-19 emergency.

The Plaintiffs' arguments somehow miss a self-evident point. The unnamed class members they purport to represent are largely in the over-70 age group that is least likely to manage affairs by email, internet, or fax, or to be comfortable going over legal documents and legal issues by phone. Comparing the resources of individuals over 70 to a governmental entity strains credulity, and points out starkly Plaintiffs' odd lack of understanding for the unnamed class members. The Department, as an agency of state government, has resources beyond that of everyday citizens and that of small businesses and even some large businesses. It can more easily provide the equipment and technology to have many of its employees work remotely and still provide a level of service, compared to individuals or private entities. The unnamed class members do not share such facilities.

Certainly, many financial and legal advisors may be trying to continue serving their clients and are trying to work as best they can from remote locations. But, just because some types of professionals are not categorically prohibited from working in some states, it does not mean they are in fact working, or that they are able to effectively work remotely, or that they are as available and accessible to service their clients during the COVID-19 emergency as they would be in the absence of the national emergency. All of the unnamed class members would first need to be in a position to reach such persons, if available. They may not be able to do that, for the reasons stated above.

Plaintiffs' attitude seems to be that if *some* unnamed class members can respond to the settlement mailing in time, then it is fair to *all* unnamed class members. Fairness to a minority that may be uncompromised by a pandemic is not fairness to the rest of the class who are likely compromised by the pandemic. Many financial advisors and lawyers who would likely assist the unnamed class members may be people who operate or work for very small businesses or are even solo practitioners. It is not reasonable to assume that they can and are providing the same level of service in a timely manner to their clients during a pandemic. Nor is it reasonable to assume that the unnamed class members all have the resources or skills to make use of such services through available digital technology when they must remain isolated at home and do not have the assistance of others. The older age of the class members in this case means it is more likely that "there might be disparities in access to or literacy in digital resources" compared to the population at large.[4]

More importantly, although there may be some class members who have the technological resources and equipment to scan policy documents and the class notices, and then email them to

---

[4] https://www.thelancet.com/action/showPdf?pii=S2468-2667%2820%2930061-X

financial and legal professionals who can receive them and who remain working, many likely do not. And, for those who may not have an existing relationship with a financial or legal advisor, and are faced with trying to find someone they trust to advise them in the middle of a national emergency, they are going to be severely disadvantaged.

Rather than blindly assuming every class member and their advisors all have the technological savvy and resources to overcome the severe limits currently placed on them, a more realistic assumption would be that a significant number of class members are likely to be severely disadvantaged during the COVID-19 emergency. To ensure that all class members are treated fairly, the Court should enter a temporary stay.

> **E. Class members need to have access to their policy documents and need to share documents and the class notices with advisors.**

The Plaintiffs argue that the class members do not need to have their policy documents in hand when deciding whether to opt-out or object to the proposed settlement. Pls.' Opp'n Br. at 7 (ECF No. 113). The Plaintiffs contend, "All Class members presumably know they have a long-term care policy with Genworth, and most, if not all, understand the basic terms and coverage of their policies." *Id.* Plaintiffs also claim, "The decision whether to opt-out or object to the Settlement . . . does not require policyholders be familiar with each and every term of their policy." *Id.* at 7-8.

As discussed above, in order to make a fully informed decision whether to opt-out or object to the proposed settlement, a class member must be allowed to assess the relative merits of the proposed settlement compared to not settling or objecting to the settlement. That assessment cannot be made without a careful analysis of the terms of their policy and a careful analysis of the proposed terms of the settlement. The Plaintiffs' suggestion that policyholders are likely already

11

familiar with the terms of their policies without having to read the policies is not reasonable. It is more likely that not a single policyholder would understand the financial implications of the proposed settlement operating from memory and without financial advice based on the policy language. Most people either have never read their policies, or if they have, they have not committed the terms of their policies to memory so that they would not benefit from having their policies in hand to read them.

Moreover, a financial or legal advisor contacted by a class member for assistance will almost be certain to request that the class member provide a copy of the policy, a copy of the class notice, and copies of other documents in order to be able to properly advise them. They could not provide proper advice without them.

The Plaintiffs ask the Court to ignore the fact that some class members may have their policy documents in a location that cannot be easily accessed during the COVID-19 emergency, such as in a bank safe deposit box. The Plaintiffs claim that there is no need for concern because the class members can easily contact Genworth and ask for a copy. Pls.' Opp'n Br. at 8 (ECF No. 113). This assumes that during the COVID-19 emergency Genworth will be able to timely field inquiries from tens of thousands (or more) class members asking for copies of their policies, and that all of the unnamed class members would know to ask Genworth for a copy.

In fact, the class notice mailed to the class members actually says class members should *not* contact Genworth regarding the settlement, and to the extent it states that contacting Genworth generally about their policies is still allowed, the notice provides no phone number or other means of contacting Genworth directly to request a copy of their policies. *See* Order of March 31, 2020, Exhibit C (ECF No. 104, Exhibit C) ("You should not contact the Court, Genworth, or Genworth's

counsel with questions about this Notice or the settlement, although you may contact Genworth, as usual, about your policy, benefits, or any election letter received.").

The Plaintiffs also suggest that class members who are adversely impacted by the COVID-19 emergency can easily come to court, show good cause, and seek an exception to the deadlines. Pls.' Opp'n Br. at 8 (ECF No. 113). However, this is not a reasonable or fair solution. Under the Plaintiffs approach, if a class member is ill, or otherwise unable or limited in their ability to make a timely, fully informed decision to stay in the class, opt-out or object, they must (1) get legal advice on what to do; (2) hire counsel to file paperwork with the court or file paperwork with the court themselves; and (3) show cause why they are unable to comply with the deadlines set out in the notice. Requiring unnamed class members to hire counsel to advise them what to do, then file paperwork and show cause to try to obtain an exception to the deadlines would only serve to impose even greater burdens on the approximately 200,000 unnamed class members. The Department believes that the better approach, which is reasonable and fair, is to acknowledge that a significant portion of the class may be unfairly burdened during this time of national emergency, and to stay the deadlines for a few months.

### F. The ability to make an informed decision to opt-out or object now outweighs the possible harm of a few months delay in some class members getting their proposed settlement benefits next year.

The Plaintiffs speculate that some class members might actually be glad to receive news of the proposed class settlement during the national emergency and will gladly have deadlines imposed on them to decide what action to take. According to the Plaintiffs, class members will likely be in need for extra funds due to the COVID-19 emergency, and the proposed settlement may provide a possible damages award to some of them, which might help to cover some of their financial needs. Therefore, the Plaintiffs contend, the class members will want the class settlement

to move forward now, without delay, so that they will more quickly get any damages payment they might receive under the settlement if it is approved.

The reality is that even if the case is not temporarily stayed, and even if the settlement is approved, no relief would be provided to any class members until sometime next year, if then. The proposed deadline for selecting a settlement benefit is not planned to occur until December 8, 2020 at the earliest. *See* Order of March 31, 2020, Exhibit B, page 8 (ECF No. 10-4, Exhibit B). The considerable benefit of a temporary stay of a few months now to ensure there is fairness to all of the class members and to allow them to make informed decisions whether to opt-out or object to the settlement, outweighs the relatively minor interest of some class members, who might eventually obtain a damages award in the settlement, of getting their award a few months sooner next year.

G. **The need to send out additional notices does not outweigh the benefits of a temporary stay.**

Plaintiffs argue that the notices have already gone out with the current deadlines and hearing date, and as a result, the Court should simply push forward and not stay the proceedings in this case. They are critical of the Department for not intervening and moving to stay the proceedings sooner. The Plaintiffs contend that sending out additional notices with new dates would cause excessive confusion.

The Department was not untimely and could not have acted quicker to seek a temporary stay. The Department filed its Motion to stay shortly after public filings in this case revealed that the parties were proceeding with the notice and would not be delaying or staying any of the proceedings relating to the proposed settlement in light of the COVID-19 emergency. Only then was it necessary to seek a stay. Until it became clear that the COVID-19 emergency was not going

14

to quickly subside, and thus it would cause unfair deadlines to be imposed on the unnamed class members, the Department had no reason to seek a stay. Nor did the Department have a reason to seek a stay until it became clear that the parties were not going to temporarily stay the proceedings on their own, despite a pandemic.

The Court's order of March 31, 2020, and the attachments to that Order (ECF No. 104) approving the amended settlement and the class notices, made clear that the parties were proceeding to send out notices during the COVID-19 emergency. Under the Class Action Fairness Act, 28 U.S.C. § 1715 (CAFA), notice of the amended settlement resulting from that Order, which contained the notice document specifying the deadline of June 13, 2020 to opt-out or object, and which kept the July 10, 2020 hearing date, had to be provided to the Department. The CAFA notice was not mailed to the Department until April 3, 2020. *See* Def.'s Notice of Compliance (filed on April 6, 2020) (ECF No. 105).

The Department filed the Motion on April 10, 2020 (ECF No. 108), just five business days after the notice required by CAFA was *mailed* by Genworth to the Department. The Department's Motion was filed *four days prior to the date that the parties had informed the Court they were likely to mail out the class notices – i.e., on April 14, 2020.* The Department could not have acted quicker. In any event, the Plaintiffs had actual knowledge of the Department's Motion immediately upon it being filed with the Court on April 10, 2020. They did nothing to hold off mailing the notices to the class the following week.

Because the parties decided to mail out the notices even though there was a pending motion to stay, any confusion to the class members due to receiving a second notice is not the fault of the Department. The Plaintiffs could have held the mailing of the notices for a brief period of time.

Instead, they made the conscious decision to proceed and mail out the notices even though they knew that if a stay were entered as a result of the Motion a second notice would be needed.

More importantly, there is no more than a very slight risk of any confusion due to a second notice. That slight risk does not outweigh the benefits to the unnamed class members of a temporary stay. Plaintiffs argue that all unnamed class members would be able to make complex financial decisions during a pandemic without the assistance of financial and legal advisors, and without having their policies in hand, but then suggest those same class members would be confused by a simple notice informing them of later deadlines. Fundamental fairness to the unnamed class members during a time of a national emergency outweighs the possibility of any unlikely confusion that might result from the issuance of a second notice informing the class members of the stay, the new deadlines to take action, and the new hearing date.

Other important deadlines and dates have already been extended for a few months during the national emergency by the states and by the federal government, such as the annual tax filing deadlines. No doubt there are many other important deadlines and dates that are being, or will be, extended due to the COVID-19 emergency. The class members will therefore not be surprised and should not be confused when they are informed of another important deadline being extended due to the national emergency in order to make sure they are treated fairly.

### H. The Court has discretion to determine the length of the stay.

The Plaintiffs argue that the Court should deny the Motion because it asks for an indefinite stay which they contend could last for a period of years. However, there is no reason to assume that a stay would need to last more than a few months. And, if the Court decides that a stay of a certain, specified period would be more appropriate than a stay that would last until the COVID-19 emergency subsides, the Court has the discretion to do so.

### III.   CONCLUSION

None of the Plaintiffs' arguments provides a proper basis for the Court to ignore the national COVID-19 emergency and refrain from taking the reasonable action of entering an order temporarily staying these proceedings.  A temporary stay will ensure that the unnamed class members are fairly treated.  Failure to temporarily stay these proceeding would ensure that many unnamed class members will be treated unfairly.  The benefits of a temporary stay outweigh the purported interests identified by the Plaintiffs of not temporarily staying these proceedings. For the reasons discussed above, and in the Department's opening brief, the Court should grant the Department's Motion for Temporary Stay of Proceedings in this case and stay this case until the national emergency due to the COVID-19 virus subsides, or so long as the Court otherwise deems it appropriate to stay this case.

Respectfully submitted,

/s/ Roscoe C. Howard, Jr.
Roscoe C. Howard, Jr.
(Virginia Bar No. 17447)
BARNES & THORNBURG LLP
1717 Pennsylvania Ave NW, Suite 500
Washington, D.C. 20006
Telephone: (202) 371-1313
Facsimile: (202) 289-1330
E-mail:  Roscoe.Howard@btlaw.com

Bart A. Karwath
(Pro Hac Vice)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN  46204-3535
Telephone:    (317) 231-7252
Facsimile:    (317) 231-7433
Email: bart.karwath@btlaw.com

*Attorneys for the Indiana Department of Insurance*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of April, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Virginia using the CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by operation of the Court's CM/ECF system.

/s/ Roscoe C. Howard, Jr.