UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Richmond Division)

| | |
|---|---|
| JEROME SKOCHIN, SUSAN SKOCHIN and LARRY HUBER, Individually and on Behalf of All Others Similarly Situated, <br><br>                   Plaintiffs,<br><br>      vs.<br><br>GENWORTH LIFE INSURANCE COMPANY and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK,<br><br>                  Defendants. | Civil Action No. 3:19-cv-00049-REP<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS TO THE NAMED PLAINTIFFS**

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND
        APPROPRIATE...................................................................................................4

        A.      Negotiated Fee Agreements Are Favored.................................................5

        B.      The Agreed-upon Fee and Expense Award Will Not Reduce the Value of
                the Settlement...........................................................................................6

        C.      A Reasonable Percentage of the Benefit Conferred on the Settlement Class
                Is the Appropriate Method for Awarding Attorneys' Fees ......................7

        D.      Class Counsel's Fee Request Is Reasonable and Appropriately
                Compensates and Incentivizes Counsel ....................................................8

                1.      The Amount in Controversy and the Result Obtained for the
                        Settlement Class Supports the Requested Fee ...............................9

                2.      The Novelty and Difficulty of the Questions Raised, and the Skill
                        and Experience of Counsel, Support the Requested Fee ...........10

                3.      Awards in Comparable Cases Support the Requested Fee .........12

                4.      The Contingent Nature of Class Counsel's Representation, and the
                        Risk of Nonpayment, Support the Requested Fee .....................13

                5.      The Reaction of the Settlement Class and Endorsement of Named
                        Plaintiffs Support the Requested Fee..........................................14

                6.      The Time and Labor Expended Supports the Requested Fee ...................15

                        a.      Class Counsel's Lodestar Multiplier Is Reasonable and
                                Appropriately Rewards and Incentivizes Counsel ........16

                        b.      Class Counsel's Hours and Fees Are Reasonable.........18

III.    CLASS COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND
        WERE NECESSARILY INCURRED..............................................................19

IV.     THE REQUESTED SERVICE AWARDS ARE REASONABLE AND SHOULD
        BE APPROVED ................................................................................................20

V.      CONCLUSION...................................................................................................22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Affiliated Ute Citizens v. United States*,
    406 U.S. 128 (1972) ...................................................................................................11

*Agofonova v. Nobu Corp.*,
    No. 1:07-cv-06926, ECF No. 75 (S.D.N.Y. Feb. 6, 2009) .....................................17

*Babcock v. C. Tech Collections, Inc.*,
    No. 1:14-CV-3124 (MDG), 2017 WL 1155767
    (E.D.N.Y. Mar. 27, 2017) ...........................................................................................6

*Barber v. Kimbrell's, Inc.*,
    577 F.2d 216 (4th Cir. 1978) ....................................................................................10

*Blessing v. Sirius XM Radio, Inc.*,
    507 F. App'x 1 (2d Cir. 2012) .....................................................................................5

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) .....................................................................................................7

*Brotherton v. Cleveland*,
    141 F. Supp. 2d 907 (S.D. Ohio 2001) ....................................................................22

*Cendant Corp. PRIDES Litig.*,
    243 F.3d 722 (3d Cir. 2001) ..................................................................................7, 8

*Foti v. NCO Fin. Sys., Inc.*,
    No. 04 Civ. 00707 (RJS), 2008 U.S. Dist. LEXIS 16511
    (E.D.N.Y. Feb. 20, 2008) ........................................................................................6, 7

*Helmick v. Columbia Gas Transmission*,
    No. 2:07-CV-00743, 2010 WL 2671506
    (S.D.W. Va. July 1, 2010) .........................................................................................21

*Henderson v. Verifications Inc.*,
    No. 3:11cv514-REP, 2013 WL 12146748
    (E.D. Va. Mar. 13, 2013) ......................................................................................8, 13

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .....................................................................................................5

*In re Auto. Refinishing Paint Antitrust Litig.*,
    No. 1426, 2008 WL 63269
    (E.D. Pa. Jan. 3, 2008) ..............................................................................................22

Page

*In re Celebrex (Celecoxib) Antitrust Litig.*,
  No. 2:14-cv-00361, 2018 WL 2382091
  (E.D. Va. Apr. 18, 2018)................................................................................7, 13

*In re Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ........................................................................5

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 CIV 10240 (CM), 2007 WL 2230177
  (S.D.N.Y. July 27, 2007)

*In re Genworth Fin. Sec. Litig.*,
  210 F. Supp. 3d 837 (E.D. Va. 2016) ................................................... *passim*

*In re Lumber Liquidators Chinese-Manufactured Flooring
  Prods. Mktg., Sales Practices & Prod. Liab. Litig.*,
  952 F.3d 471 (4th Cir. 2020) ......................................................................15

*In re Microstrategy, Inc.*,
  172 F. Supp. 2d 778 (E.D. Va. 2001) ................................................... *passim*

*In re Mills Corp. Sec. Litig.*,
  265 F.R.D. 246 (E.D. Va. 2009) .............................................................7, 8, 19

*In re Nat'l Collegiate Athletic Assoc. Athletic Grant-In-Aid Cap Antitrust Litig.*,
  No. 14-md-2541, ECF No. 1169-1 (N.D. Cal. Mar. 26, 2019)................................18

*In re NII Holdings, Inc. Sec. Litig.*,
  No. 1:14-cv-00227, ECF No. 257-1 (E.D. Va. Aug. 12, 2016).............................19

*In re NII Holdings Inc. Sec. Litig.*,
  No. 1:14-cv-00227-LMB-JFA, 2016 WL 11660702
  (E.D. Va. Sept. 16, 2016)......................................................................13

*In re Remeron Direct Purchaser Antitrust Litig.*,
  No. Civ. 03–0085 FSH, 2005 WL 3008808
  (D.N.J. Nov. 9, 2005)..........................................................................22

*In re Remeron End–Payor Antitrust Litig.*,
  No. Civ. 02-2007 FSH, 2005 WL 2230314
  (D.N.J. Sept. 13, 2005) .......................................................................22

*In re Rite Aid Sec. Litig.*,
  362 F. Supp. 2d 587 (E.D. Pa. 2005) ..................................................17

**Page**

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................................................17

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*,
   886 F. Supp. 445 (E.D. Pa. 1995) .......................................................................15

*In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005)..................................................................14

*Jones v. Dominion Res. Servs., Inc.*,
   601 F. Supp. 2d 756 (S.D.W. Va. 2009) .............................................................21

*Kirkpatrick v. Cardinal Innovations Healthcare Sols.*,
   352 F. Supp. 3d 499 (M.D.N.C. 2018) ...................................................3, 5, 8, 16

*Knurr v. Orbital ATK, Inc.*,
   No. 1:16-cv-01031-TSE-MSN, 2019 WL 3317976
   (E.D. Va. June 7, 2019)..........................................................................................7

*McBean v. City of New York*,
   233 F.R.D. 377 (S.D.N.Y. 2006) ........................................................................22

*Phillips v. Triad Guar. Inc.*,
   No. 1:09-cv-71, 2016 WL 2636289
   (M.D.N.C. May 9, 2016)......................................................................................18

*Pierce v. Rosetta Stone, Ltd.*,
   No. C 11-01283 SBA, 2013 WL 5402120
   (N.D. Cal. Sept. 26, 2013) ..................................................................................21

*Rodriguez v. W. Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) .........................................................................20, 21

*Ryals v. Strategic Screening Sols., Inc.*,
   No. 3:14-cv-00643-REP, 2016 WL 7042947
   (E.D. Va. Sept. 15, 2016)...................................................................8, 13, 20, 21

*Sadowska v. Volkswagen Grp. of Am., Inc.*,
   No. CV 11-00665-BRO, 2013 WL 9600948
   (C.D. Cal. Sept. 25, 2013)....................................................................................6

*Savani v. URS Prof'l Sols. LLC*,
   121 F. Supp. 3d 564 (D.S.C. 2015).....................................................................21

**Page**

*Shapiro v. JPMorgan Chase & Co.*,
No. 11 Civ. 8331 (CM), 2014 WL 1224666
(S.D.N.Y. Mar. 24, 2014) ................................................................................5

*Skochin v. Genworth Life Ins. Co.*,
413 F. Supp. 3d 473 (E.D. Va. 2019) ...........................................................11

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ...........................................................................6

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
No. CIV.A. 03-4578, 2005 WL 1213926
(E.D. Pa. May 19, 2005) ................................................................................17

*United States v. City of New York*,
No. 13-CV-3123 (NGG) (RLM), 2016 U.S. Dist. LEXIS 78755
(E.D.N.Y. June 16, 2016) ................................................................................6

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
Rule 23(h) ...........................................................................................................5

**SECONDARY AUTHORITIES**

Dan Packel, "Weil Fees in Sears Bankruptcy Shine Light on Big Billers:
The Paralegals, *The American Lawyer* (Jan. 24, 2019) .........................................18

Sara Randazzo & Jacqueline Palank,
*Legal Fees Cross New Mark: $1,500 an Hour*,
Wall St. J. (Feb. 9, 2016)................................................................................18

Goldman Scarlato & Penny, P.C., Robbins Geller Rudman & Dowd LLP, Phelan Petty PLC, and Berger Montague PC, counsel for the Named Plaintiffs[1] and the Settlement Class ("Class Counsel") respectfully submit this memorandum in support of their application for an award of attorneys' fees and expenses and service awards to the Named Plaintiffs.[2]

## I.    INTRODUCTION

Class Counsel respectfully move for an award of attorneys' fees, litigation expenses, and service awards pursuant to the Settlement. Class Counsel seek – and Genworth has agreed to pay – an aggregate fee award of between $12,000,000 and $26,500,000, to be paid by Genworth separately from the Settlement Class benefits. This amount is fair and reasonable based upon the relief Class Counsel achieved for the Settlement Class, the time and effort devoted to the Action, and the contingent nature of their representation.

In awarding attorneys' fees, courts consider several factors, notably the result obtained and the quality and quantity of work. Here, Class Counsel worked tirelessly devoting nearly 5,500 hours to this litigation, on a contingency basis, in order to obtain a very favorable Settlement for the Settlement Class.[3] The Settlement achieves the litigation's main goals, delivering the core relief plaintiffs could expect to obtain had they prevailed on the merits of their claims – namely, a more complete and adequate disclosure from Genworth about future premium increases. The Settlement offers Settlement Class members several election options in connection with their long-

---

[1]    The "Named Plaintiffs" are Jerome Skochin, Susan Skochin, and Larry Huber.

[2]    All capitalized terms not defined herein shall have the same meanings as in the Joint Stipulation of Class Action Settlement and Release dated December 20, 2019 ("Stipulation") (ECF No. 93-1). The Parties' Amendment to the Stipulation, dated March 25, 2020, was filed with the Court on March 26, 2020 (ECF No. 102-2). Citations are omitted and emphasis is added unless otherwise noted.

[3]    Over the next year or so, as the Settlement Class receive their Special Election Letters, Class Counsel will provide as many additional hours of their time as necessary to assist the Settlement Class.

term care insurance policies, including enhanced "Paid-up Benefit Options" or "Reduced Benefit Options" with cash damages payments. Stipulation, ¶43 and Appendix C and D. The Settlement also provides injunctive relief in the form of additional meaningful disclosures regarding, among other things, "GLIC's Plans for Significant Additional Future Rate Increases" ("Disclosures"). *Id.*, ¶43(a) and (b) and Appendix B.

This relief provided Settlement Class members in this Settlement is considerable. Class Counsel have conservatively estimated that the cash damages payments to Settlement Class members will exceed $100 million. That estimate of cash damages also does not account for the very significant benefits for the thousands of Settlement Class members that will elect to have their non-forfeiture benefits ***doubled*** in the Settlement. None of these amounts will be reduced in any way by Genworth's payment of attorneys' fees, costs, and the Named Plaintiffs' service awards. For all the reasons set forth herein and in the accompanying Memorandum of Law in Support of Named Plaintiffs' Motion for Final Approval of Class Action Settlement ("Final Approval Brief"), the Settlement is an outstanding result.

The recovery was achieved through the skill, experience, and effective advocacy of Class Counsel in the face of considerable risk and an aggressive defense mounted by Defendants[4] through two of the largest and most sought-after defense firms in the country. The Settlement was reached only after Class Counsel overcame Defendants' motion to dismiss by sufficiently alleging and arguing the legal merits of their claims and by taking certain core discovery. This included reviewing and analyzing hundreds of thousands of pages of documents and taking depositions of Genworth's

---

[4]   Defendants Genworth Life Insurance Company ("GLIC") and Genworth Life Insurance Company of New York ("GLICNY") are collectively referred to herein as "Genworth" or "Defendants."

key representatives, all on an expedited basis. The quality and quantity of work by Class Counsel resulted in a very favorable result for the Settlement Class.

As compensation for their efforts, Class Counsel respectfully request an award of attorneys' fees as follows:

    (a)    $2,000,000.00 relating to the injunctive relief that is substantially in the form of the Disclosures ("Injunctive Relief Fee"); and

    (b)    an additional contingent payment of 15% of certain amounts related to Special Election Options selected by the Settlement Class, which shall be no less than $10,000,000.00 and no greater than $24,500,000.00 ("Contingent Fee").[5]

Stipulation, ¶52. Class Counsel's efforts to date have been without compensation of any kind and the fee has been wholly contingent upon the result achieved. Class Counsel demonstrated that they were prepared to take this case through trial and beyond to achieve a terrific result for the Settlement Class. While the relief provided here is exceptional, the requested Contingent Fee is relatively modest. A 15% fee is far below the fees awarded by this Court and others in this District in other recent class actions. *See* below at 12. Likewise, to the extent the Court performs a lodestar cross-check, the multiplier here, 4.25x, is consistent with the acceptable range of multipliers (2 to 4.5x) routinely approved by this Court and other courts in the Fourth Circuit. *See Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 507 (M.D.N.C. 2018) ("'Courts have

---

[5]    Those amounts related to the Special Election Options are defined in the Stipulation, as amended, as follows: (i) damages payments actually paid to Settlement Class members who elect a Paid-up Benefit Option as described in Appendix C, Option I.A.1 or Option III.A.1; (ii) damages payments actually paid to Settlement Class members who elect a form of Reduced Benefit Option as described in Appendix C, Option I.B.1, Option I.B.2, Option I.B.3, Option III.B.1, or Option III.B.2; (iii) damages payments actually paid to Settlement Class members described in Appendix C, Option II.2; and (iv) an amount equivalent to the Settlement Class member's paid-in premiums during the time period beginning January 1, 2016 through December 31, 2019 for Settlement Class members who elect a Paid-up Benefit Option described in Appendix C, Option I.A.2, II.1, or Option III.A.2.

- 3 -

found that lodestar multipliers ranging from 2 to 4.5 demonstrate the reasonableness of a requested percentage fee.'").

Since fee awards are designed to encourage counsel to get the best possible result for the class, the amount requested in this case is warranted given the outstanding recovery obtained and the significant obstacles and risks Class Counsel faced in bringing and prosecuting this case. As discussed herein, the recovery of what the Named Plaintiffs sought – more complete disclosures (Stipulation, App'x B), ***doubling*** of paid-up benefits, and large cash damages payment options (including ***four-times*** the difference in premiums) (*id.*, App'x C) – is a near complete recovery, if not more. Accordingly, in light of the success achieved by Class Counsel and the time and effort expended, the requested fee, which is well below others awarded in the Fourth Circuit on a percentage basis, is warranted.

In addition, the Named Plaintiffs – who have participated in and overseen the Action from its inception – approve of and endorse the requested fee. Class Counsel respectfully request that this Court approve the requested amount of fees and litigation expenses as justified under the particular facts of this case.

Separately, the Named Plaintiffs seek service awards of $25,000 each in connection with their representation of the Settlement Class. The Named Plaintiffs support their applications with declarations setting forth the basis for the awards. The Named Plaintiffs respectfully request that the Court approve the requested awards.

## II.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND APPROPRIATE

On January 15, 2020, the Court granted preliminary approval of the Settlement and the Notice of Pendency of Class Action and Proposed Settlement ("Notice") (Stipulation, App'x E), as amended on March 31, 2020 [ECF No. 104-3], which informed Settlement Class members that Class Counsel would seek attorneys' fees as follows: (a) $2,000,000.00 for the Injunctive Relief

- 4 -

4812-9525-8811.v2

Fee; and (b) an additional Contingent Fee of between $10,000,000.00 and $24,500,000.00. Class Counsel also informed the Settlement Class that they would request an award of litigation expenses in an amount not to exceed $75,000.00; and service awards not to exceed $25,000.00 for each Named Plaintiff. *Id.*

## A.    Negotiated Fee Agreements Are Favored

Rule 23(h) permits the Court to "award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, the fees are ***both*** authorized by law ***and*** by the Parties' agreement. Paragraph 52 of the Stipulation permits Class Counsel to seek attorneys' fees of between $12 million and $26.5 million. The requested fees and expenses were agreed to by the Parties only after they had reached agreement on the substantive terms of the Settlement and following extensive negotiation. Declaration of Rodney A. Max [ECF No. 93-2], ¶25. Such negotiated fee and expense awards are favored, and courts have endorsed them. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."); *Blessing v. Sirius XM Radio, Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012) (upholding fee award by District Court that was agreed to by the parties, stating that "the fee was negotiated only after settlement terms had been decided and did not, as the district court found, reduce what the class ultimately received"); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fees); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666, at \*25 (S.D.N.Y. Mar. 24, 2014) ("That the Attorneys' Fee Payment was later separately negotiated weighs in favor of its reasonableness.").

The fact that the Parties were able to avoid a "second major litigation," as to the fees and expenses through extensive negotiations, weighs in favor of the award. *Hensley*, 461 U.S at 437.

**B.      The Agreed-upon Fee and Expense Award Will Not Reduce the Value of the Settlement**

The requested fees and expenses sought here will not affect the benefits available for the Settlement Class.  Courts recognize that reduction of a negotiated fee would benefit only the defendant in such circumstances.  *See, e.g.*, *Foti v. NCO Fin. Sys., Inc.*, No. 04 Civ. 00707 (RJS), 2008 U.S. Dist. LEXIS 16511, at *21 (E.D.N.Y. Feb. 20, 2008) (finding proposed amount of fees to be fair in case where class settlement was not a monetary common fund, and attorneys' fees were not to "come out of the pocket of class members"; the court noted that "were the Court to reduce the agreed-upon amount of attorneys' fees, the only beneficiary would be [defendant] – not the class").

Even where a class settlement includes monetary benefits, as in the case here, courts around the country often approve reasonable fee requests when the award will be paid separately and does not impact the relief provided to class members.  Because Genworth has agreed to pay this fee, "the court need not inquire into the reasonableness . . . with precisely the same level of scrutiny as when the fee amount is litigated."  *Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003).  The Court's role is instead "to ensure that the Parties' agreement on fees and expenses is reasonable and does not reflect a collusive settlement placing the interests of counsel above the interests of the Class."  *Sadowska v. Volkswagen Grp. of Am., Inc.*, No. CV 11-00665-BRO (AGRx), 2013 WL 9600948, at *8 (C.D. Cal. Sept. 25, 2013); *Babcock v. C. Tech Collections, Inc.*, No. 1:14-CV-3124 (MDG), 2017 WL 1155767, at *10 (E.D.N.Y. Mar. 27, 2017) ("In a case where the requested attorneys' fees will be paid directly by defendant rather than drawn from a common fund, 'the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members.'"); *see also United States v. City of New York*, No. 13-CV-3123 (NGG) (RLM), 2016 U.S. Dist. LEXIS 78755, at *13 (E.D.N.Y. June 16, 2016) (noting that "the $9.5 million in attorneys' fees are not being taken from the class common

- 6 -

fund at all. Instead, the attorneys' fees here were negotiated separately from the class recovery and are being paid directly by Defendant.").

Here, the cash damages payments to the Settlement Class members for reduced benefit options are calculated as four times the amount in the reduction in premium for each option. For Paid-up Benefit Options, the cash damages payments are equal to 100% of the premiums paid between 2016-2019. Settlement Class members can also enhance the paid-up policy benefits by doubling them in lieu of receiving a cash damages payment. There is no cap or limit to how much Genworth will pay out to Settlement Class members, and these payments approximate complete financial relief for the claims asserted. As the attorneys' fees will be paid entirely separate from these amounts, and the payments to Settlement Class members are uncapped, there is no viable mechanism to enhance those payments *if* the Court reduced the amount of attorneys' fees. In other words, the Settlement Class members would not benefit from reducing the fees, only Genworth would. *See, e.g.*, *Foti*, 2008 U.S. Dist. LEXIS 16511, at *21.

### C. A Reasonable Percentage of the Benefit Conferred on the Settlement Class Is the Appropriate Method for Awarding Attorneys' Fees

It is well settled that attorneys who achieve a common settlement fund for the benefit of a class are "entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). If paid from a common fund, the requested fees here would be supported by the traditional factors for analyzing the fairness and reasonableness of a common fund fee request as set forth in *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 261 (E.D. Va. 2009) (citing *Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 733 (3d Cir. 2001)).

Determining the appropriate percentage fee is case specific, but district courts in the Fourth Circuit have awarded 28% to 33% of the recovery as attorneys' fees in recent and similar class actions. *See, e.g.*, *Knurr v. Orbital ATK, Inc.*, No. 1:16-cv-01031-TSE-MSN, 2019 WL 3317976, at *1 (E.D. Va. June 7, 2019) (awarding 28% fee); *In re Celebrex (Celecoxib) Antitrust Litig.*, No.

- 7 -

2:14-cv-00361, 2018 WL 2382091, at *5 (E.D. Va. Apr. 18, 2018) (awarding 33% fee in antitrust class action settlement); *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016) (awarding 28% fee in securities class action settlement); *Ryals v. Strategic Screening Sols., Inc.*, No. 3:14-cv-00643-REP, 2016 WL 7042947, at *2 (E.D. Va. Sept. 15, 2016) (Payne J.) (awarding 26.752% fee in in Fair Credit Reporting Act ("FCRA") class settlement); *Henderson v. Verifications Inc.*, No. 3:11cv514-REP, 2013 WL 12146748, at *5 (E.D. Va. Mar. 13, 2013) (awarding 28.67% fee in FCRA case). To ensure the reasonableness of the percentage fee awarded, district courts in the Fourth Circuit sometimes do a lodestar "cross-check." A multiplier of between 2 and 4.5 have generally been held to support the requested percentage fee. *Cardinal Innovations*, 352 F. Supp. 3d at 507. Here, the 15% fee is well below the range of percentage fees approved by courts in this District and the reasonableness of the percentage is confirmed by the resulting lodestar multiplier of 4.25x, which is consistent with the 2 to 4.5x commonly approved. In addition, because the attorneys' fees that Genworth will pay Class Counsel are capped while the cash damages payments to Settlement Class members are not, it is possible (if not probable) that the contingent portion of the attorneys' fees ultimately will be less than 15%, further confirming their reasonableness.

### D.    Class Counsel's Fee Request Is Reasonable and Appropriately Compensates and Incentivizes Counsel

Courts in this District consider the following factors to assess the reasonableness of percentage-of-the-fund fee awards: (1) the result obtained for the class; (2) the presence or absence of substantial objections by members of the class to the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by the plaintiffs' counsel; and (7) awards in similar cases. *Mills Corp.*, 265 F.R.D. at 261 (citing *Cendant Corp.*, 243 F.3d at 733). In addition, there are three objectives in "setting a fair and reasonable fee." *In re*

*Microstrategy, Inc.*, 172 F. Supp. 2d 778, 787 (E.D. Va. 2001). First, the fee "must adequately compensate lead counsel for the time expended on the case." *Id.* Second, the fee "must also, where appropriate, include a reward or enhancement beyond the lodestar figure to account for the difficulty of the case, the degree of success achieved, and other qualitative factors." *Id.* And third, the fee "must include an incentive component to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task" of representing a class. *See id.* at 788.

Class Counsel's 15% requested fee, resulting in a 4.25x lodestar multiplier, satisfies each of the objectives and each of the above factors, is approved and endorsed by the Named Plaintiffs, and should be awarded as fair and reasonable in this case.

> **1.    The Amount in Controversy and the Result Obtained for the Settlement Class Supports the Requested Fee**

"The first and most important factor for a court to consider when making a fee award is the result achieved." *Genworth*, 210 F. Supp. 3d at 843; *see also MicroStrategy*, 172 F. Supp. 2d at 787 (stating that a fee should "include a reward or enhancement" for "the degree of success achieved"). Put differently, clients care most about results and would willingly pay, and are financially better off paying, a larger fee for a great result than a lower fee for a poor outcome. Here, not only will the Settlement Class receive a great result, they can enjoy those benefits without having to pay Class Counsel's fees – that amount is paid entirely by Genworth.

The Settlement is an exceptional result for the Settlement Class by any measure. The recovery is certain and has been obtained through the considerable efforts of Class Counsel without the expense, delay, and uncertainty of continued litigation. *See* Final Approval Brief, §IV.C. The Settlement provides significant injunctive relief in the form of disclosures that provides Settlement Class members visibility about future rate increases and then provides them the option to keep their policies in the face of dramatically increasing premiums or make changes to their policies

and also receive cash damages payments depending on their choice. Based on Genworth's data regarding benefit reductions in response to prior rate increases, it also is a very large financial settlement in absolute terms (*id.* at §I). Essentially, the Settlement provides nearly everything that Named Plaintiffs sought (and could seek) in their complaint.

In the end, the Settlement Class cares most about getting a great result. This outstanding result obtained for the Settlement Class supports Class Counsel's fee request and merits an appropriate fee that encourages counsel to seek excellent results.

### 2. The Novelty and Difficulty of the Questions Raised, and the Skill and Experience of Counsel, Support the Requested Fee

The complexity or difficulty of issues is another factor that can support an enhanced fee award. *See Genworth*, 210 F. Supp. 3d at 844; *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978); *MicroStrategy*, 172 F. Supp. 2d at 787. Relatedly, *Genworth* and *Barber* look to the skill and efficiency of the attorneys involved. *See Genworth*, 210 F. Supp. 3d at 844; *see Barber*, 577 F.2d at 226 n.28.

As detailed in the Final Approval Brief, §IV.C, from the outset, this Action was a difficult and highly uncertain case, with no assurance that it would survive Defendants' attacks on the pleadings, motion(s) for summary judgment, trial, and appeal. For example, although the Court denied some of Genworth's arguments at the motion-to-dismiss stage,[6] Genworth would argue at summary judgment and trial that the evidence demonstrates it did not make any material misstatements or omissions. Indeed, the difficulties of proof were substantial. The underlying facts involved complicated issues of insurance regulation and actuarial accounting that may be challenging for most laypersons to understand.

---

[6]   Defendants successfully moved to dismiss Plaintiffs' breach of contract claim. *See* August 29, 2019 Memorandum Opinion (ECF No. 78) at 20-23 ("as a matter of law, Genworth did not breach an explicit provision of the plaintiffs' contracts").

Further, Genworth would have argued that class certification was unwarranted on Named Plaintiffs' claims because, according to Genworth, both fraud and state consumer-protection law claims require proof of reliance. Named Plaintiffs would have argued that a presumption of reliance was available under *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972) (reliance for fraud claim presumed based on materiality of omission), based on Genworth's omissions being material, and that the rate increase notification letters were all uniform based on template forms. Genworth, however, would have disputed that and, in any event, would have argued that any presumption would have been rebutted.

Moreover, Genworth would have undoubtedly appealed any decision to certify the class and any adverse judgment. At the Fourth Circuit, Named Plaintiffs would have faced substantial risk, including the risk that this Court's rejection of Genworth's filed-rate doctrine arguments, *Skochin v. Genworth Life Ins. Co.*, 413 F. Supp. 3d 473, 484 (E.D. Va. 2019), would have been reversed. As Genworth made clear to the Court during its motion-to-dismiss briefing and argument, nearly all prior cases brought against long-term care insurers were dismissed on the pleadings under the filed-rate doctrine. *See, e.g.*, ECF Nos. 40 at 10-16; 48 at 2-9; *see also* Transcript of Motion Hearing on July 10, 2019, at 4:11-15, ECF No. 60 (Defendants' counsel: "[T]here's plenty of case law, Your Honor. The filed-rate doctrine takes care of all cases that would – all claims, including fraud, that would attack – would violate the underlying principles of the filed-rate doctrine."). This Court (correctly, in Named Plaintiffs' view) disagreed; but, the risk of reversal was real.

After battling to keep the case alive and battling to obtain relevant documents, Class Counsel reviewed and analyzed over 205,000 pages of documents and marshaled evidence on complex factual and legal issues such as contract interpretation, insurance-related financial and actuarial issues (*e.g.*, reserves for future liabilities), and damages, all the while preparing a

compelling factual record to support Named Plaintiffs' motion for class certification. Class Counsel carefully identified deponents and prepared for and took several critical depositions of Genworth's representatives and its expert, as well as defending their clients' depositions. *See* Final Approval Brief, §IV.B.1.; Declaration of Brian D. Penny in Support of (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and (2) Class Counsels' Motion for an Award of Attorneys' Fees and Expenses and Service Awards to the Named Plaintiffs ("Penny Decl."), ¶19, submitted herewith. In doing so, Class Counsel expended significant time, resources, and skill in developing compelling evidence to establish liability and damages. *See* Final Approval Brief, §IV.B.1.; Penny Decl., ¶¶19-20.

The recovery obtained for the Settlement Class is the result of these efforts, and Class Counsel's diligence and skill enabled them to negotiate a very favorable recovery for the Settlement Class under difficult and challenging circumstances. *See Genworth*, 210 F. Supp. 3d at 844 (noting the "skill required in complex cases such as this involving massive discovery efforts and complicated issues of fact and law" weighed in favor of awarding 28% fee).

### 3. Awards in Comparable Cases Support the Requested Fee

In *Genworth*, the court held that the "award of 28% to the Plaintiffs' Counsel is fair and reasonable," and noted that plaintiffs had cited several cases "in which courts grant attorneys' fees varying from 25% to 33.3% of the total Settlement amount." 210 F. Supp. 3d at 845 & n.4 (citing settlements ranging from $165 million to $325 million where attorneys' fees of 25% to 33.3% were awarded). Here, the recovery is better than most cases, providing substantial financial and injunctive relief, yet Class Counsel's requested 15% fee is well below recent fees for comparable complex litigation settlements:

| Cases in the Fourth Circuit | Settlement | Fee % |
|---|---|---|
| *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-cv-00361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) | $94,000,000.00 | 33% |
| *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837 (E.D. Va. 2016) | $219,000,000.00 | 28% |
| *In re NII Holdings Inc. Sec. Litig.*, No. 1:14-cv-00227-LMB-JFA, 2016 WL 11660702 (E.D. Va. Sept. 16, 2016) | $41,500,000.00 | 25% |
| *Ryals v. Strategic Screening Sols., Inc.*, No. 3:14-cv-00643-REP, 2016 WL 7042947 (E.D. Va. Sept. 15, 2016) | $1,492,869.09 | 26.752% |
| *Henderson v. Verifications Inc.*, No. 3:11-cv-514-REP, 2013 WL 12146748 (E.D. Va. Mar. 13, 2013) | $3,750,000.00 | 28.67% |

        **4.**     **The Contingent Nature of Class Counsel's Representation, and the Risk of Nonpayment, Support the Requested Fee**

A determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties which were overcome in obtaining the settlement. *See Genworth*, 210 F. Supp. 3d at 844. Class Counsel prosecuted this Action for more than a year on a wholly-contingent basis despite the risks of surviving dispositive motions; obtaining class certification; proving liability and damages; and litigating the case through trial and possible appeals. *See* Final Approval Brief, §IV.C.; Penny Decl., ¶19. To date, Class Counsel have not been compensated for their time or expenses in representing the Settlement Class. Penny Decl., ¶19. Litigation of these cases can be extremely protracted and yet law firm salaries, leases, and other expenses must be paid, while counsel wait for several years to be paid, if at all. For example, in another case handled by one of Class Counsel, *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 1:02-cv-05893 (N.D. Ill.), Robbins Geller Rudman & Dowd LLP litigated the case for 14 years through trial and appeal, without compensation and expending over $35 million in actual, out-of-pocket expenses without third-party funding, before reaching a settlement. In Class Counsel's view, it is their hard-earned

- 13 -

reputations and willingness to go all the way to get the best possible result that benefits the Settlement Class and makes them highly sought out firms for clients. Nevertheless, in every case the risk of losing and not being paid at all remains, as there are numerous class actions in which plaintiffs' counsel expended thousands of hours and lost, receiving no compensation. *See In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy.").

Class Counsel bore the risks of litigation and committed significant time to the vigorous and successful prosecution of this Action to achieve the best possible result for the Settlement Class. In doing so, Class Counsel diverted resources – and the litigators in this case – away from other potentially meritorious actions. The contingent nature of counsel's representation, and the risk of nonpayment, supports approval of the requested fee.

**5.    The Reaction of the Settlement Class and Endorsement of Named Plaintiffs Support the Requested Fee**

The Named Plaintiffs, who most closely observed the work of Class Counsel, approve and endorse the fee request. *See accompanying* Declaration of Jerome Skochin ("J. Skochin Decl."), ¶10; Declaration of Susan Skochin ("S. Skochin Decl."), ¶10; Declaration of Larry Huber ("Huber Decl."), ¶10. This endorsement strongly supports the reasonableness of the fee request.

In addition, Settlement Class members were informed in the Notice that Class Counsel would move the Court for attorneys' fees as described above. Settlement Class members were also advised of their right to object to the fee request, and that such objections are required to be filed with the Court and served on the Settlement Administrator no later than June 13, 2020. As of the date of this filing, more than 200,000 Notices were sent to Settlement Class members, and there have been only fifteen (15) objections to counsel's fee request to date, three (3) of which

- 14 -

have been withdrawn by the policyholders.[7]  *See Genworth*, 210 F. Supp. 3d at 844 (the "limited objection to attorneys' fees within the range awarded by the Court demonstrates their reasonableness").

While Class Counsel will fully address all timely-filed objections in their June 26, 2020 reply, Class Counsel would be remiss if they did not point out at this time that the few objections to the fee award received to date either misconstrue the monetary benefits under the Settlement, wrongly assume that Genworth has offered the Settlement benefits to policyholders before, or fail to provide any factual support for their arguments, including the argument that the Settlement will "financially wound" Genworth.  *See In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 487 (4th Cir. 2020) ("We will not, however, nullify the Settlement Approval Order predicated on the Objectors' current speculation as to Lumber Liquidators' financial future.").

### 6.    The Time and Labor Expended Supports the Requested Fee

Defense firms generally bill by the hour and therefore it does not serve the interests of the parties nor judicial economy to also create an economic incentive for plaintiffs' counsel to prolong litigation.  Thus, awarding fees based on the percentage method "has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or 'churn' cases" and, therefore, the trend has been toward use of the percentage method.  *See MicroStrategy*, 172 F. Supp. 2d at 787.[8]

---

[7]  The following individuals submitted objections to Class Counsel's fee request:  Larry and Sharon Johnson (filed May 5, 2020), ECF No. 120; Jon C. Richards (filed May 5, 2020), ECF No. 119; Ronald and Pamela Simpson (filed May 8, 2020), ECF No. 121; Thomas D. Luck (filed May 11, 2020), ECF No. 122; and Mark Ostrich (filed May 11, 2020), ECF No. 123.

[8]  Indeed, as courts have observed, through the percentage method, "[a] number of salutary effects can be achieved . . . including removing the inducement to unnecessarily increase hours, prompting early settlement, reducing burdensome paperwork for counsel and court, and providing a degree of predictability to fee awards."  *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 886 F. Supp. 445, 460 (E.D. Pa. 1995).

Nevertheless, courts in this District recognize that reviewing counsel's lodestar as a "cross-check" can assist in assessing the reasonableness of a percentage fee. *See Genworth*, 210 F. Supp. 3d at 845; *MicroStrategy*, 172 F. Supp. 2d at 787 (stating that a fee should "adequately compensate lead counsel for the time expended on the case"). Since fee awards are designed to encourage efficient litigation and great results, courts recognize that the fee award should "include a reward or enhancement beyond the lodestar figure to account for the difficulty of the case, the degree of success achieved, and other qualitative factors." *Id.* Overall, the awarding of fees "contemplate[s] the exercise of sound judgment by the trial court in adjusting the lodestar figure after a qualitative assessment of various factors." *Id.* Each of those factors supports the requested fee and resulting 4.25x lodestar enhancement requested in this case.

### a. Class Counsel's Lodestar Multiplier Is Reasonable and Appropriately Rewards and Incentivizes Counsel

In this Circuit, "'[c]ourts have found that lodestar multipliers ranging from 2 to 4.5 demonstrate the reasonableness of a requested percentage fee.'" *Cardinal Innovations*, 352 F. Supp. 3d at 507. Multipliers are appropriate to encourage efficiency and to compensate for the delay in payment and additional risks because, unlike defense firms who are guaranteed payment win or lose and paid immediately, Class Counsel are only paid at the end of the case and only if the case is successful. *See, e.g.*, *MicroStrategy*, 172 F. Supp. 2d at 788 ("there is no fee unless there is a recovery and the fee awarded must bear a reasonable relation to the size of the recovery").

In this case, Class Counsel and their paraprofessionals have expended to date nearly 5,500 hours in the prosecution of this Action with a resulting lodestar (after writing off time in the exercise of billing judgment) of approximately $2.82 million, resulting in a 4.25x multiplier to Class Counsel's lodestar based on their fee request.[9] *See accompanying* Declaration of Brian D.

---

[9]   This multiple is based on the $2 million fee award in connection with the disclosures obtained, and the floor of $10 million for the 15% contingency fee award. If the cash damages paid to the

Penny Filed on behalf of Goldman Scarlato & Penny, P.C. in Support of Application for Award of Attorneys' Fees and Expenses ("Goldman Scarlato Decl."), ¶4; Declaration of Stuart A. Davidson Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."), ¶4; Declaration of Glen L. Abramson Filed on Behalf of Berger Montague PC in Support of Application for Award of Attorneys' Fees and Expenses ("Berger Montague Decl."), ¶4; Declaration of Jonathan M. Petty Filed on Behalf of Phelan Petty PLC in Support of Application for Award of Attorneys' Fees and Expenses ("Phelan Petty Decl."), ¶4. This lodestar multiplier confirms the reasonableness of the requested fee award, as it is within the 2 to 4.5x range of acceptable multipliers.

Awarding Class Counsel a 4.25x multiplier is reasonable and provides an appropriate "reward or enhancement beyond the lodestar figure to account for the difficulty of the case, the degree of success achieved, and other qualitative factors." *MicroStrategy*, 172 F. Supp. 2d at 787-88.[10]

---

Settlement Class members (including value attributed to the non-forfeiture benefit elections) exceeds $66,750,000, then the attorneys' fees will increase up to (but will not exceed) $24.5 million. Of course, in that event, the requested fees will be no more than 15% of the actual value obtained by the Settlement Class, and could be a substantially lower percentage.

[10]  *See also In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) (awarding 25% of the settlement fund of $126,800,000 and 6.96 multiplier); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. CIV.A. 03-4578, 2005 WL 1213926, at *18 (E.D. Pa. May 19, 2005) (15.6 multiplier awarded, which the court found was "neutralized with respect to the reasonableness of a percentage fee award of 20% by the extraordinary support Plaintiffs have shown for counsel's request for fees"); *Agofonova v. Nobu Corp.*, No. 1:07-cv-06926, ECF No. 75 at 6 (S.D.N.Y. Feb. 6, 2009) ("4.34 lodestar multiplier . . . is perfectly within the range that is acceptable"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts."); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 CIV 10240 (CM), 2007 WL 2230177, at *17 n.7 (S.D.N.Y. July 27, 2007) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District.").

**b.    Class Counsel's Hours and Fees Are Reasonable**

Although courts need not apply "exhaustive scrutiny" to Class Counsel's lodestar and "may accept the hours estimates provided by Class Counsel," *Phillips v. Triad Guar. Inc.*, No. 1:09-cv-71, 2016 WL 2636289, at *7 (M.D.N.C. May 9, 2016), courts may "examine [the lodestar's] components and assess their reasonableness." *MicroStrategy*, 172 F. Supp. 2d at 788.  Here, both Class Counsel's hours and rates are reasonable for practitioners in this area of the law.

First, the nearly 5,500 hours committed to the prosecution of this case by Class Counsel to date are "reasonable in light of the degree of difficulty involved in prosecuting this complicated case against expert and experienced defense counsel." *Id.*; *see also* Final Approval Brief, §IV.C.  In fact, Class Counsel's hours demonstrate that they litigated this Action with exceptional efficiency.

Second, Class Counsel's rates are "within the range of reasonableness." *MicroStrategy*, 172 F. Supp. 2d at 788.  Class Counsel's rates are lower than the standard set by national defense firms that defend class actions.[11]

---

[11]    The rates for the Sears bankruptcy are for the national law firms of Weil, Gotschal & Manges and Paul, Weiss, Rifkind, Wharton & Garrison. *See* Dan Packel, "Weil Fees in Sears Bankruptcy Shine Light on Big Billers: The Paralegals," *The American Lawyer* (Jan. 24, 2019), https://www.law.com/americanlawyer/2019/01/24/weil-fees-in-sears-bankruptcy-shine-light-on-big-billers-the-paralegals/ (last visited May 22, 2020).  The rates for the NCAA antitrust case are for the national law firm of Winston & Strawn LLP. *See In re Nat'l Collegiate Athletic Assoc. Athletic Grant-In-Aid Cap Antitrust Litig.*, No. 14-md-2541, ECF No. 1169-1 at 12 (N.D. Cal. Mar. 26, 2019).  In addition to these examples, it was publicly reported that partners at national firms were "routinely charg[ing] between $1,200 to $1,300 an hour," and Kirkland & Ellis LLP had billing rates as high as $1,445 per hour – four years ago in 2016. *See* Sara Randazzo & Jacqueline Palank, *Legal Fees Cross New Mark: $1,500 an Hour*, WALL ST. J. (Feb. 9, 2016), https://www.wsj.com/articles/legal-fees-reach-new-pinnacle-1-500-an-hour-1454960708?cb=logged0.10928983175737395 (last visited May 22, 2020).  The information for the plaintiffs' firm rates are taken from the settlement filings in those cases.

| | Genworth LTC Plaintiff Firm 2020 Rates | Sears Bankr. Defense Firm 2019 Rates | NCAA Antitrust Defense Firm 2018 Rates | Genworth Plaintiff Firm 2016 Rates | NII Holdings Plaintiff Firm 2016 Rates | Comp. Sciences Plaintiff Firm 2013 Rates |
|---|---|---|---|---|---|---|
| **Partner** | $400-$1,100 | $1,025-$1,600 | $820-$1,445 | $700-$995 | $775-$985 | $750-$975 |
| **Associate** | $300-$630 | $560-$1,030 | $545-$765 | $500 | $390-$725 | $440-$665 |
| **Counsel** | $775 | $1,025-$1,160 | | $700 | $650 | $725 |
| **Staff Attys[12]** | $300-$425 | $345-$480 | $85 | $340-390 | $335-$435 | $325-$390 |
| **Paralegals** | $43-$350 | $240-$480 | $170-$340 | $285-$310 | $150-$325 | $200-$295 |
| **Investigators** | $290 | | | $245-$495 | $425-$495 | $410-$485 |
| **Lit. Support** | $220 | | $275 | $285 | | |
| **Analysts** | | | | $325 | $300-$550 | |

Notably, only one of the attorneys for Class Counsel who worked on this matter had hourly rates of over $1,000, but they billed less than 0.006% of the total hours in this case. *See* Goldman Scarlato Decl., Ex. A; Robbins Geller Decl., Ex. A; Berger Montague Decl., Ex. A; Phelan Petty Decl., Ex. A. All remaining attorneys' rates are between $300 and $970. *See id.* As demonstrated herein, Class Counsel's rates are in line with comparable cases or even below the rates submitted by nationwide firms.

## III. CLASS COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED

As with attorneys' fees, Genworth has agreed to pay Class Counsel's litigation expenses up to $75,000 in addition to, and apart from, the relief being provided to the Settlement Class. Stipulation, ¶53. Class Counsel seek a modest award of $64,398.66 in litigation expenses. Class Counsel's expenses and charges are set forth in the accompanying firm declarations. *See* Goldman Scarlato Decl., ¶5; Robbins Geller Decl., ¶5; Berger Montague Decl., ¶5; Phelan Petty Decl., ¶5.

---

[12]  Staff Attorneys includes "project" or "contract" attorneys. Courts in this District have included these attorneys at "market rates" because they "are part of the team brought in to benefit the class" and "[t]heir contributions are of a similar nature to the attorneys who are in the firms retained by plaintiffs." *Mills Corp.*, 265 F.R.D. at 265 ("[T]he Court has absolutely no trouble finding that the contract attorneys should be billed at market versus cost."); *see also In re NII Holdings, Inc. Sec. Litig.*, No. 1:14-cv-00227, ECF No. 257-1 at 99 (E.D. Va. Aug. 12, 2016) (including contract attorneys in lodestar).

These expenses and charges were reasonable and necessary to the prosecution of the claims and achieving the Settlement. *See* Goldman Scarlato Decl., ¶¶5-6; Robbins Geller Decl., ¶¶5-6; Berger Montague Decl., ¶5-6; Phelan Petty Decl., ¶¶5-6.

The "items of costs reported include expenditures for computer legal research, document reproduction, . . . court reporting, . . . consultant fees, and travel, meals, and lodging," which are "reasonable in a case with this level of complexity, and they bear a reasonable relationship to the time and effort expended and the result achieved." *MicroStrategy*, 172 F. Supp. 2d at 791; *accord Genworth*, 210 F. Supp. 3d at 845.

The remaining expenses – such as mediation fees, service fees, and charges for photocopies, telephone services, delivery services, and transcripts and videography – are all "reasonable in a case with this level of complexity, and they bear a reasonable relationship to the time and effort expended and the result achieved." *MicroStrategy*, 172 F. Supp. 2d at 791. The Notice advised Settlement Class members that Class Counsel would seek an award of up to $75,000 in expenses, and there have been no objections to date regarding such an award. Class Counsel respectfully request payment of these reasonable litigation expenses.

## IV.     THE REQUESTED SERVICE AWARDS ARE REASONABLE AND SHOULD BE APPROVED

Finally, Class Counsel seek, and Genworth does not oppose, service awards in the amount of $25,000 for each of the Named Plaintiffs. If approved, Genworth will pay these awards separately. Genworth's agreement to pay them will not diminish the amount of the monetary relief provided to Settlement Class members. Stipulation, ¶54.

Service awards "are commonplace in class actions in this District and elsewhere." *Strategic Screening Solutions*, 2016 WL 7042947, at *2, *accord Rodriguez v. W. Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Such awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in

- 20 -

bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. Relevant considerations are the actions the class representative has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the class representative expended. *See Strategic Screening Solutions*, 2016 WL 7042947, at *2 ("Plaintiff has earned [the service award] by prosecuting this case, answering discovery, and keeping up-to-date on the case status through conferences with his [c]ounsel."); *Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 5402120, at *6 (N.D. Cal. Sept. 26, 2013).

The requested $25,000 awards for each of the Named Plaintiffs here are warranted. The Named Plaintiffs actively participated in the prosecution of this case by regularly communicating and working with Class Counsel. They produced all documents in their possession, custody, and control to Genworth, responded to Genworth's interrogatories, gathered extremely private financial and medical information to comply with the Court's discovery rulings, *see* Complete Transcript of the Conference Call on August 14, 2019, ECF No. 75, and took time away from their lives to prepare for and testify at depositions. *See* J. Skochin Decl., ¶¶3-9; S. Skochin Decl., ¶¶3-9; Huber Decl., ¶¶3-9.

In seeking to hold Genworth accountable to the law, the Named Plaintiffs subjected themselves to public attention and exposure of their personal information. Named Plaintiffs pursued these claims notwithstanding the risks that private information would likely be discoverable and perhaps at some point unsealed; in effect, they risked forfeiting their own privacy rights to vindicate the rights of others like them. Under all the circumstances of this case, the requested service awards are justified. *See, e.g.*, *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 577 (D.S.C. 2015) ($15,000); *Helmick v. Columbia Gas Transmission*, No. 2:07-CV-00743, 2010 WL 2671506, at *3 (S.D.W. Va. July 1, 2010) ($50,000); *Jones v. Dominion Res. Servs.*,

*Inc.*, 601 F. Supp. 2d 756, 768 (S.D.W. Va. 2009) ($15,000 where none of the class representatives produced documents or sat for a deposition); *In re Auto. Refinishing Paint Antitrust Litig.*, No. 1426, 2008 WL 63269, at *7-*8 (E.D. Pa. Jan. 3, 2008) ($30,000); *McBean v. City of New York*, 233 F.R.D. 377, 391-92 (S.D.N.Y. 2006) (stating incentive awards of $25,000–$30,000 are "solidly in the middle of the range"); *In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ. 03–0085 FSH, 2005 WL 3008808, at *18 (D.N.J. Nov. 9, 2005) ($60,000); *In re Remeron End– Payor Antitrust Litig.*, No. Civ. 02-2007 FSH, 2005 WL 2230314, at *33 (D.N.J. Sept. 13, 2005) ($30,000); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001) ($50,000).

## V.    CONCLUSION

For all the reasons stated herein, and in the accompanying declarations and the Final Approval Brief, Class Counsel respectfully request that the Court: (i) award Class Counsel attorneys' fees as follows: $2,000,000.00 relating to the injunctive relief and an additional contingent payment of 15% of certain amounts related to Special Election Options selected by the Settlement Class, which shall be no less than $10,000,000.00 and no greater than $24,500,000.00, and the payment of litigation expenses of $64,398.66; and (ii) award the Named Plaintiffs $25,000 each in connection with their representation of the Settlement Class.

DATED: May 25, 2020                 Respectfully submitted,

                                    PHELAN PETTY PLC


                                       /s/  Jonathan M. Petty
                                    MICHAEL G. PHELAN (VSB No. 29725)
                                    JONATHAN M. PETTY (VSB No. 43100)
                                    3315 West Broad Street
                                    Richmond, VA  23230
                                    Telephone:  804/980-7100
                                    804/767-4601 (fax)
                                    mphelan@phelanpetty.com
                                    jpetty@phelanpetty.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON (*pro hac vice*)
CHRISTOPHER C. GOLD (*pro hac vice*)
BRADLEY BEALL (*pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

GOLDMAN SCARLATO & PENNY, P.C.
BRIAN DOUGLAS PENNY
Eight Tower Bridge, Suite 1025
161 Washington Street
Conshohocken, PA 19428
Telephone: 484/342-0700
484/342-0701 (fax)
penny@lawgsp.com

BERGER MONTAGUE PC
SHANON J. CARSON
GLEN L. ABRAMSON
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: 215/875-3000
215/875-4604 (fax)
scarson@bm.net
gabramson@bm.net

Attorneys for Plaintiffs and Class Counsel

- 23 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 25, 2020, I filed the foregoing pleading or paper through the

Court's CM/ECF system, which sent a notice of electronic filing to all registered users.

/s/ Jonathan M. Petty
Jonathan M. Petty (VSB No. 43100)
PHELAN PETTY, LLC
3315 West Broad Street
Richmond, VA 23230
Telephone: 804/980-7100
804/767-4601 (fax)
jpetty@phelanpetty.com

*Counsel for Plaintiffs*

4812-9525-8811.v2