IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

JEROME SKOCHIN et al.　　　　　　）
　　　　　Plaintiff,　　　　　　　　）　　3: 2019 CV 00049
vs.　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　）
GENWORTH LIFE INSURANCE　　　）
COMPANY et al.　　　　　　　　　）
　　　　　Defendants,　　　　　　　）

## CLASS MEMBER'S AMENDED AND REFILED OBJECTIONS TO PROPOSED SETTLEMENT OPTIONS AND "OPT OUT" PROCESS

NOW COMES DONNA WRIGHT ("Wright"), a Class Member and Interested Party by virtue of her ownership of a Long-Term Care Insurance Policy issued by Genworth (GE Capital) on April 2003. (Genworth /GE Long Term Care Policy Number ███████547), who hereby submits her AMENDED AND REFILED OBJECTIONS to the Proposed Settlement Options and "OP OUT" Process.

### I.　　BACKGROUND.

1.　　　　Wright is 69 years of age, and the owner of a Long-Term Care Insurance Policy from Genworth (GE Capital) (Genworth /GE Long Term Care Policy Number ██████6547) which was issued to her in April 2003 when she was 53 years of age and which she has owned and held as its owner and sole  beneficiary since that date. (See Wright Declaration, **Exhibit 1**).

2.　　　　The face of her policy shows the following benefits:

| | |
|---|---|
| Elimination Period | 100 days |
| Daily Payment Maximum | $150.00 |
| Lifetime payment Maximum | $164,250.00 |

3.　　　　The daily and lifetime maximum benefits were subject to a 5% automatic compound benefit increased annually.

4.      On May 18, 2020, Wright called the Genworth hot line (800-883-1127) and was advised that her Policy was in full force and effect, that her next premium payment was due October 2020 in the amount of **$734.40** which has not increased in the last 17 years, and that the value of her current benefits, adjusted for the annual 5% increase, were estimated to be as follows:

| | |
|---|---|
| Daily Payment Maximum | $343.81 |
| Lifetime payment Maximum | $376,471.95 |

(See Wright Declaration, **Exhibit 1**).

5.      The Plaintiff's initial complaint was filed on January 18, 2019. Plaintiff's Second Amended Complaint was filed September 20, 2019 (see docket entry no. 84). Defendant filed it answer to the Second Amended Complaint on October 4, 2019 (see docket entry 85).

6.      Plaintiff filed its Third Amended Complaint on November 22, 2019.

7.      The Defendants filed no answer to the Third Amended Complaint.; its obligation answer was stayed by order of this Court.

8.      The docket sheet reflects that no counterclaim/cross claim has been filed by any Defendant against any Class member or the Class Representatives.

9.      Pursuant to its Order of January 15, 2020, this Court granted preliminary approval of class certification primarily for purpose of issuing notice of the Proposed Settlement to Class members. Prior to that date, no order had been entered approving Class Certification or requiring notice of this action to any Class Members.

10.      On March 31, 2020, this Court issued its order of final approval of class certification for purposes of issuing Notice of a proposed settlement to Class Members.

11.     On April 24, 2020, the Class Representative issued a "Notice of Pendency of Class Action and Proposed Settlement," which Wright received on or about April 29, 2020. (See **Exhibit 2** hereto hereinafter referred to as "Class Notice").

12.     Prior to receipt of the Class Notice, Wright had received no notice of the pendency of this action or the Proposed Settlement.

13.     On May 21, 2020, Wright filed her original Objections.

14.     On May 22, 2020, Plaintiff filed its Memorandum seeking to have her Objections stricken under Local Rule 83.1(M) and Rule 11.

15.     On May 28, 2020, Wright withdrew her Objections.

16.     On May 29, 2020, filed her Response to the Memorandum contesting the basis of the Plaintiff's Memorandum and request for relief under Local Rule 83.1(M) and Rule 11.

17.     Wright hereby files her Amended Objections.

## II.     OVERVIEW.

Wright should not be included as a class member since she has been subject to no increase in premiums since purchasing her policy and does not fall in any of the categories set forth in the Plaintiffs' complaint for class members who claim to have been subject to rate increases of 40% - 60% and had received notices of potential rate increases of at least 150% over the next 6-8 years. (See Third Am Cmpl., ¶¶153-159). Wright, and class members similarly situated, have been exposed to no such rate increases since their policies were issued.

Thus, the effect of the including of Wright and other class members similarly situated is that they are giving Genworth a global release in exchange for no benefit.

3

## III.   INTRODUCTION.

Based upon the standards set forth by the Fourth Circuit Court of Appeals, the fairness

and adequacy of a settlement requires the proponent to meet a 2-prong test of fairness and

adequacy:

> The relevant factors in assessing a settlement's "fairness" are: "(1) the posture of the case
> at the time settlement was proposed; (2) the extent of discovery that had been conducted;
> (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in
> the area of securities class action litigation." *Jiffy Lube*, 927 F.2d at 159.
>
> In turn, the factors to be considered in assessing a settlement's "adequacy" are:
> (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any
> difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case
> goes to trial; (3) the anticipated duration and expenses of additional litigation; (4) the
> solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5)
> the degree of opposition to the settlement.

*In re Mills Corp. Securities Litigation*, 265 F.R.D. 246, 254 (E.D. Va. 2009)

The only record before the Court suggesting that the proposed Settlement is fair or

adequate is the Memorandum in support of Motion to Direct Notice and the Proposed Settlement

Agreement attached to the Motion as an exhibit. (Docket entries 91, 92 and 93)(Hereinafter

"Memorandum"). The Memorandum largely consists of Plaintiff's counsel's self-serving, self-

congratulatory statements and boiler-plate research which fails to address that actual impact of

the proposed settlement terms on the Class Members as a whole or in specific. The

Memorandum is supported by a single affidavit of the mediator Mr. Rodney Max who refused to

provide meaningful details of the mediation process, and 3 boiler-plate exhibits not tailored or

tethered in any way to this case: an FTC staff report, Fitzpatrick Law Review Article and the

Affidavit of Cameron Azari from Epiq on the issue of Notice. In the absence of further details

from Plaintiff's Counsel, the 3 boiler plate exhibits are simply puffery designed to create the illusion of "expert" support for a proposed settlement that does not benefit the Class Members.[1]

(a). **The summary of "negotiations" cannot support a finding of fairness or adequacy**. The Memorandum provides precious little details of what gave rise to the proposed settlement under which—amazingly—Class Members must give the Defendants a global, irrevocable release before knowing its future "benefits" that it will receive. The Memorandum suggests that the settlement discussions occurred in two sessions on September 28, 2019 and October 17 and 18, 2019. We have no idea how the discussions started and ended (in terms of party positions) and how they benefited the Class Members. Specifically, although Plaintiff's counsel asserts in the Memorandum the hearsay claim of the mediator (Mr. Rodney Max) that the parties had made "substantial progress" during the one month delay between the 2 mediation sessions, there is nothing in the Affidavit of Mr. Max to support this assertion. Indeed, the Max Affidavit refuses to provide any details that could support the conclusion of fairness and adequacy, based upon the novel, albeit inaccurate, theory that the discussions were confidential under Federal Rule 408.

Of course, this is completely inaccurate. Evidentiary Rule 408 prevents settlement discussions from being admitted into evidence *for the purpose of establishing or defending a claim*. It does not bar the disclosure of those settlement discussions to establish the statutory requirement of fairness and adequacy under Federal Rule 23, and nothing in the Memorandum or the Max Affidavit provide any authority for this theory. As set forth in the committee comments to Rule 408, the rule "bars compromise evidence only when offered as evidence of the

---

[1] The phrase "expert" is used in the colloquial sense, since there is no record that any of these three authors/affiants were or could be qualified as experts under Federal Rule 26(a)(2).

"validity," "invalidity," or "amount" of the disputed claim. The intent is to retain the extensive case law finding Rule 408 inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim." Indeed, the fact that Mr. Max makes this assertion raises serious questions as to his competence and independence.

Thus, there is no record before the Court to support the conclusory claims in the Memorandum that attribute to Mr. Max the hearsay claim that there was "substantial progress" during mediation of that the proposed settlement was the result of "good faith bargaining at arm's length." We do not know, for example, whether the "Settlement Options"—which form the gravamen of the Settlement Agreement—were proposed by Genworth and never altered during mediation—a conclusion that could certainly be implied from the fact that all the benefits flow to the defendants because the Class Members must provide irrevocable releases in advance of receiving any benefit under their policies

More significant, the proposed benefits (which are not in place yet) as summarized in the Settlement Agreement have been calculated not to benefit the Class Members but to benefit Plaintiff's counsel and the 3 Class Representatives by orchestrating an upfront refund under certain options intended to fund counsel fees, rather than to the any reduction in premium increases or benefits of the policy holder.

Plaintiff's counsel seeks to sidestep this issue by asserting that their fees "will not be paid out of any cash award for the Settlement." This misses the point. There appears to be a pot available and agreed to by Genworth of $2,000,000 which should be set aside as a common fund for the benefit of the Class Members. Absent a common fund, it is difficult to see how the fees do not impact the proposed benefits, especially a proposed fee of $2,000,000 for the vague,

6

undefined "non-monetary disclosure benefits." Any way you slice it, there is available a fund of $2,000,000 that should be set aside for Class Member but is not.

      (b).   **The Class Member receive no benefit under the proposed Settlement**. The record before this Honorable Court exposes the fact that the Class Members similarly situated to Wright receive no benefit at all.[2] The Complaint was filed based in part of the allegations that Genworth was going to seek unspecified cumulative rate increases and that the Class Representative's complaint was that they had been subject to rate increases of 40% - 60% and had received notices of potential rate increases of at least 150% over the next 6-8 years. (See Third Am Cmpl., ¶¶153-159). Wright, and class members similarly situated, have been exposed to no such rate increases since their policies were issued.

      The purpose of the relief sought in the complaint was, *inter alia*, a declaratory judgment of material information that was withheld as to rate increases and to be placed in the same position they would have been in prior to the omission of that information. (See Third Am Cmpl., ¶212).

      Simply put, the Disclosures to the Settlement Agreement clearly suggests that nothing was accomplished by the Proposed Settlement that benefits Wright or other Class Members similarly situated. Genworth's plans for future rate increases exceed the 60% set forth in the compliant and are proposed to be not less than 203% for policy holders such as Wright whose policy includes lifetime benefits.

---

[2] Indeed, this is a consistent theme in the Objections filed by many of the other Objectors. (See docket entries 115-125, 132-133, 148-149 and 156-158).

In addition, the proposed "Options" are equally lacking in value to the Class Members based upon the current Disclosures in the Settlement Agreement, which of course are not even final and are "subject to change." (See **Exhibit 3**). Indeed, Wright and others similarly situated does not benefit one iota from any of the proposed 5 options. Under the Disclosures (Appendix B) the cumulative rate her policy is subject to at most cumulative rate increases of 203%--increasing her current premiums between now and the eligibility period to potentially $2,900.00 while maintain her current 5% inflation adjustment. Yet, for example, under Options 1 and 2, her lifetime benefit would be cut in half with no further premium payments and no 5% inflation adjustment. Under Options 4, her premium payment would be increased with a reduction in the daily benefit and no 5% inflation adjustment.

     **(c).**   **The test for fairness has not been met**.     Based upon the present record, the proposed settlement does not meet the test for fairness. There is no record to establish the extent of the negotiations that gave rise to a settlement under which the class members immediately give the Defendants a global, irrevocable release without knowing what if anything they would receive as a part of the undefined "Special Election Options" that have not been quantified.

     Moreover, the agreed scheduling Order of August 2, 2019 (later vacated the same day in what appears to be a *sua sponte* order without findings) indicates that the main fact discovery ("Phase 2 Discovery") would not commence until September 2019 and would not be completed until December 2019. The Memorandum described in general terms the document production and interestingly, the submission to defendants of over 100 requests to admit. Naturally none of these summaries of discovery provides any clue that would permits the Class Members to assess the potential defenses of Genworth at trial. For example, did Genworth admit or deny the

requests for admission, facilitating the Plaintiff's case; or did Plaintiff simply agree to allow Genworth to defer its obligation to answer under Federal Rule 26.

In short, the record is scant that would permit the Class Members to conclude that the Class Members can make an informed decision of Genworth's ability to prevail at trial. We are then left with the standard boiler plate comments in the Memorandum—applicable to any case under Federal Rule 23 or otherwise—that there is risk the Defendants might prevail at trial.

## IV.    OBJECTIONS.

**(i).    Based upon the Proposed Settlement, there presently is no record that a majority of the Class Members have given affirmative, informed consent to the Proposed Settlement.**

The Notice of Proposed Settlement authorizes inverted or implied informed consent: the failure to object implies informed consent to the terms of the Settlement (See **Exhibit 1, p 2**). There is no dispute that consent to a class settlement, as with all other type of consent, must be informed consent. Wright has found no decisions in the Virginia District Court or the Fourth Circuit that defines the required informed consent needed to have a class affirmatively consent to a proposed settlement before it is approved. Outside the context of class settlements, there are no rigid rules to determine whether a settlement notice to class members satisfies constitutional and Rule 23(e) requirements... .'" *Turner*, 472 F. Supp. 2d at 839 (citing Fed. R. Civ.P. 23(e)(1)(B) and *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005), *cert. denied*, 544 U.S. 1044, 125 S. Ct. 2277, 161 L. Ed. 2d 1080. The issue ultimately turns on whether the class representative and its counsel have provided adequate representation of the class members (not just the class representatives). See, e.g. See, e.g., *Radcliffe v. Experian Info Solutions Inc.*, 2013 U.S. App. LEXIS 7932, *18.

Adequate representation is difficult to establish where, as in the present case, the interests of the class members are disparate and divergent based upon the differing policies owned by the class members. As Plaintiffs admit in its Notice of Proposed Settlement, some the class members hold policies which went into non-forfeiture status prior to January 1, 2014; others are in "fully paid up status; still others hold lapsed policies (See Notice, p. 2, **Exhibit 2** hereto).

In the context of consent under Federal Rule 23(e), that requires that the counsel for the class representative explain the effect and material risks of the proposed settlement on the class members and in this case the subgroups of the class member with differing policies at issue. Nothing in the Plaintiff's Memorandum in support of its Motion to Direct Notice sets forth any such disclosures or any authority under Federal Rule 23 that the failure to object can permissibly permit this Court to imply such informed consent. (See docket entry no 92).

The only record submitted as to notice is the affidavit of Cameron Azari which spends a lot of time talking about the general concept of notice in other cases (not in this case) and concluding that the "best notice practicable under the circumstances of the case, to give the class members notice of the case." (See Azari Aff., 19-23). However, that begs the question: is there anything in the Class Notice that gives the Class Members informed consent as to the material risks of each proposed option in the proposed settlement. There is not.

Further, Wright has found no authority issued by the Fourth Circuit Court of Appeals nor the District Courts of Virginia addressing the issue of whether inverted consent under Federal Rule 23(e) can constitute informed consent. However, the rulings of other courts in other circuits may be instructive. Generally, in determining the whether there has been "informed consent," the courts have often grafted the ABA rules of professional conduct onto the adequacy requirement

of Federal Rule 23(e) to ascertain whether there has been "informed consent." See, e.g., In re

Katrina Canal, 2008 U.S. Dist. LEXIS 118674, *96-99 (E. Dist. La. 2008):

> Class counsel can cure potential conflicts of interest between named members of the
> class action by obtaining "informed consent" in writing from all affected parties. Model
> Rules of Prof'l Conduct R. 1.7 (1983). "Informed consent" requires that each affected
> client be aware of the relevant circumstances and of the material and reasonably
> foreseeable ways that the conflict could have adverse effects on the interests of the
> client." Model Rules of Prof'l Conduct R. 1.7 cmt. 18 (1983); see Restatement (Third) of
> the Law Governing Lawyers § 122 (2002) ("Informed consent requires that the client or
> former client have reasonably adequate information about the material risks of such
> representation to that client or former client."); F.D.I.C., 50 F.3d at 1314 n.13; Horaist v.
> Doctor's Hosp. of Opelousas, 255 F.3d 261, 268 (5th Cir. 2001) (plaintiff waived any
> conflict that may have arisen with her lawyer "by her consent to the representation after
> full disclosure.").

In the present case, based upon the record before this Honorable Court, there has been no

showing of informed consent given to the various subgroups of class members based upon the

three (3) categories of policies identified in the Notice of Proposed Settlement that would permit

point to the conclusion that the failure to respond is the result of the Class Members' informed

consent to the Proposed Settlement.

**(ii).    Release in advance of settlement payments/benefits or disclosure of the
settlement amounts demonstrates lack of adequacy and typicality required under Federal
Rule 23(e).**

The Proposed Settlement requires the class members to provide the Defendants a

comprehensive, irrevocable global release of all claims without knowing the actual rate increases

or paid up benefits or other terms of the proposed "Special Election Options" that might be

applicable to their separate policies. The Proposed Settlement Terms does not set forth any

authority under which any court of competent jurisdiction would conclude that these terms

"conferred a benefit upon the class." Indeed, neither the Plaintiff's Memorandum nor the Azari

Affidavit provide any authority for the notion that a global release provided in advance of

knowing the consideration for the release can constitute adequate consideration. Nor does that memorandum address how a general, global release provided by class members with divergent policies can meet the typicality standards of Rule 23(e).

Finally and significantly, since Genworth has not asserted any counterclaims against any class member, the release is obviously not mutual and therefore the mutuality of the release—which is normally considered to be adequate consideration by itself —is not adequate consideration in these circumstances.

Indeed, the proposed irrevocable release is lacking in any known disclosed consideration. Certainly, the undisclosed "Special Election Options" to be provided in the future cannot constitute valid consideration. It is well settled that consideration sufficient to support a release must at a minimum provide the releasing party with something of value to permit the Court to determine whether there is a disparity between the consideration paid and the actual value of the claim. See, *Wells v. Entire Computer Center, Inc.*, 1990 U.S. App Lexis 17684 *17-19 (4th Circuit 1990)(consideration is not valid where there is a "gross disparity between the consideration paid and the actual value received").

Moreover, unspecified consideration provided *in futuro* cannot support contractual consideration. *Wagner v. NutraSweet Co.*, 873 F. Supp. 87 (ND Ill. 1994)(prospective waivers are unenforceable). It seems axiomatic that a claim cannot be considered "released" unless it was within the actual knowledge of the party. *Id.* In the present case, the claims are not within the actual knowledge of the class members since of the amounts of the "Special Election Options" are vague and certainly unknown.

As it relates to the requirements for class certification under Federal Rule 23(e), the defects in consideration affect the requirement for typicality of claims and defenses. Once again,

this is not an issue addressed in the Plaintiff's Memorandum. Indeed, as Plaintiff admits in its Class Notice, the Class Members have varying claims and varying policies. Some hold policies which went into non-forfeiture status prior to January 1, 2014; others are in "fully paid up status; still others hold lapsed policies (See Notice, p. 2, **Exhibit 2** hereto). For that reason alone, there is a lack of typicality that precludes a final order for class certification. See, _Wagner v. NutraSweet Co._, 873 F. Supp. at 110.

Simply put, the Class Notice and Proposed Settlement do not adequately provide information that a member within said Class would require in order to make a knowledgeable decision as to whether to opt out of or remain as a part of the Class Action itself.

Based upon the present record, the Proposed Settlement does not meet the test for fairness. There is no record to establish either the experience of Plaintiffs' counsel or the extent of the negotiations that gave rise to a curious settlement under which the class members immediately give the Defendants a global, irrevocable release without knowing what if anything they would receive as a part of the undefined "Special Election Options" that have not been quantified

(iii). **The Court should reject the request for attorneys' fees of $2,000,000 or alternatively subject Plaintiff's request for fees to the loadstar test of 28 USC §1712.**

Plaintiffs' counsel seeks fees in two tiers: a contingency payment of 15% of unspecified "certain amounts" related to the "Special Election Options" that have yet to be quantified and a fixed fee of $2,000,000 relating to "the injunctive relief that is in the form of the Disclosures." The docket sheet reflects the entry of no injunction. The Disclosures do not reference the need for an "injunction." (See **Exhibit 4**). No affidavit or supporting time records (redacted or otherwise) have been submitted in support of the fee request and no copies of the fee agreement have been made available or to the class member described in the Notice of Proposed Settlement.

13

Since 2 sets categories of fees are proposed as well as fees to the Three (3) Class Members strongly suggests that—in the absence of further facts to be provided by Plaintiffs' counsel and the Class Representative—the fee structure has a built in incentive award which creates a potential conflict of interest between the class representative and the class members See, e.g. _Radcliffe v. Experian Info. Solutions, Inc._, 2013 U.S. Ap. Lexis 7932, *4-6 ((9th Cir. 2013). At a minimum the Class Members should be entitled to discovery on the issue of fees from both the Class Representative and their counsel before an excessive fee award is considered—especially given the limited work that the record reveals was performed by Plaintiffs' counsel to date.

Wright submits that any award of attorney's fees requires a showing that the class members benefited from the services claimed to have been rendered by plaintiffs' counsel. With all due respect to the present Plaintiffs' Counsel, no such showing can be made in the present case. One need only look to the pending Complaints to see that the Class Member are in no different position now than they were before this action as filed. Before the action was filed, the Class Members were subject to unknown unspecified increased in policy premiums. Under the Settlement Agreement (as summarized in the Notice) the Class Members are STILL subject to unknown unspecified increases in premiums which they can elect to opt out by keeping their premiums the same in exchange for an undisclosed, unspecified decrease in coverage.

The Fourth Circuit employs a 2-tiered methodology for determining the fairness of attorney's fees in a class action case arising under Federal Rule 23:

> The court employed the percentage-of-recovery method for calculating attorneys' fees calculating attorney's fees and determined that an award equal to 28% of the $36 million settlement was reasonable.
>
> After arriving at the 28% figure, the district court performed a "lodestar cross-check." _See_ Attorney's Fees Order 14. In so doing, the court concluded that the "aggregate lodestar" was $12.5 million (24,000 hours expended x $524 per hour = $12.5 million), which was more than the award requested by Class Counsel

14

($11,160,000). *Id.* Although the court determined that the "lodestar cross-check supports the reasonableness of [Class Counsel's] requested fee award" of 31%, the court remained convinced that a 28% award was most appropriate. *Id.* at 15.

*Cantu-Guerrero v. Lumber Liquidators, Inc.*, 952 F.3d 471, 481-82 (4th Cir. 2020)

Indeed, a comparison of the fees awarded in *Lumber Liquidators, Inc.*, to the fees sought by Plaintiff's Counsel in this case militates against any award of $2,000,000. In *Lumber Liquidators, Inc.* the case was filed in 2015, spanned a 3-year period, and resulted in a settlement that was quantified at $22 million in cash and $14 million in vouchers. The settlement arose after "numerous mediation meeting" spanning over a 2-3-year period. The court's fee award of $4 million was affirmed by the Fourth Circuit because it found "*significant* discovery had been conducted, the parties had engaged in arm's length negotiations and participated in *several* mediations, and many of the lawyers had extensive experience in complex civil litigation." 952 F.3d at 476. (Emphasis added). The facts in the present case are in stark contrast: the value of the "benefit" to the class member is unknown and unquantifiable and to be blunt, illusory; the case has spanned only 14 months with no significant discovery and no answer filed by the Defendants; and no details of any "settlement discussions" or mediation sessions. In the absence of further orders of this Court, there is nothing in the record to suggest that the Plaintiffs' Counsel can support his request for $2,000,000 in fees under the Fourth Circuit's 2-part test.

(iv).    **The Court should reject the request for fees to the class representatives of $25,000.**

There is no factual basis before the court to support and award fees of $25,000.00 to the three (3) Class Representatives. At a minimum any such fees should also be subject to 28 USC §1712. In addition, the request raises the presumption of an impermissible "incentive award" of an amount in excess of the proposed cash award to other class members. See., e.g., *Radcliffe v. Experian Info. Solutions Inc.*, 2013 U.S. App. LEXIS 7932 *12-16 (9th Cir 2013).

15

**WHEREFORE,** OBJECTOR DONNA WRIGHT respectfully requests that this

Honorable Court:

      A.  Find that the Proposed Settlement does not comply with the fairness and

           adequacy standards of Federal Rule 23(e) as adopted by the United States

           Circuit Court of Appeals for the Fourth Circuit;

      B.  Find that the procedures for presuming that by not responding to the Notice of

           Proposed Settlement, the non-responding Class Members have given informed

           consent are not sufficient under Federal Rule 23;

      C.  Require any fees awarded to counsel and the Class Representatives be subject

           to the loadstar test of 28 USC §1712 as interpreted and applied by the Fourth

           Circuit;

      D.  Provide such further and other relief as this Court finds to be required or

           permitted under Federal Rule 23 and just in the premises

           Respectfully submitted,

           **DONNA WRIGHT, Class Member**

           *Donna Wright*

           by: Pro Se Objector

Donna Wright
2320 Chasewood Drive
Downers Grove, IL  60515
312-823-4110
dwright@tjbc.com
donna2320@comcastnet