IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JEROME SKOCHIN,
et al.,

     Plaintiffs,

v.                     Civil Action No. 3:19-cv-49

GENWORTH FINANCIAL, INC.,
et al.,

     Defendants.

## MEMORANDUM OPINION

This matter is before the Court on PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (ECF No. 135) ("Motion for Final Approval"). The Plaintiffs request that the Court enter an order approving the proposed Settlement Agreement as set forth in the JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE (ECF No. 93-1) (the "Settlement Agreement") and the AMENDMENT TO THE JOINT STIPULATION OF SETTLEMENT AND RELEASE (ECF No. 102-2) (the "Amendments"). For the reasons set forth below, the Motion for Final Approval will be granted.

The objections of individual class members and Class Counsel's Motion for Attorneys' Fees were addressed in separate Memorandum Opinions. See Mem. Op., ECF No. 215 (objections); Mem. Op., ECF No. 217 (attorneys' fees). In the Memorandum Opinion addressing the objections of individual class members, the Court

extensively discussed and approved the content and procedures used to inform potential class members of the Settlement Agreement and their rights thereunder; the Court also evaluated and affirmed the validity of the current Settlement Class and rejected requests for various subclasses.  Mem. Op., ECF No. 215.  The Court reaffirms those findings and both prior Memorandum Opinions (ECF Nos. 215 and 217) are incorporated by reference herein.

## BACKGROUND

The Memorandum Opinion addressing objections to the Settlement Agreement provides an extremely detailed recitation of the facts and the procedural history of this case.  See Mem. Op. at 3-23, ECF No. 215.  That information is, therefore, presumed known.  For the purposes of deciding this motion, it suffices to give only a high-level summary of the case and its history.

Plaintiffs are holders of long-term care insurance policies issued by Genworth Life Insurance Company and Genworth Financial, Inc. (collectively "Genworth" or "Defendants").  Plaintiffs initiated this class action, on behalf of themselves, and all others similarly situated, to secure redress for alleged false representations made by Genworth when offering various contractual options to its policyholders and alleged failures to disclose anticipated premium rate increases.  Specifically, Plaintiffs' claims are for fraudulent inducement by omission and violation of

the Pennsylvania Unfair Trade Practices and Consumer Protection Law.  The class consists of approximately 207,000 policyholders.

After the Court granted in part and denied in part Defendants' motion to dismiss, the parties entered settlement negotiations. See Mem. Op., ECF No. 78.  After considerable negotiation, and with the assistance of an independent mediator, the parties reached a settlement.

The Court then issued an order preliminarily approving the settlement and directing that the putative class members be sent notice of the settlement, its terms, and the schedule and procedures for objecting to or opting out of the class.  Order Granting Preliminary Approval, ECF No. 98 (the "Preliminary Approval Order").  That notice was sent to potential class members, and it fully explained (1) the options the potential class members had to communicate with Class Counsel about the settlement, (2) the potential class members' rights and options thereunder—including that they could contact independent counsel of their choice for advice, and (3) how the potential class members could access a website that was set up as part of the settlement process which provodied additional information about the settlement, including copies of select documents filed with the court.

On December 30, 2019, notice of the proposed settlement and its terms was sent to the appropriate state representatives in each of the 50 states, the District of Columbia and the U.S. Virgin

Islands, as well as to the Attorney General of the United States. DEFS.' NOTICE OF COMPLIANCE, ECF No. 95. The notice afforded the various governmental entities an explanation of the Settlement Agreement and the procedure by which they could participate in the case.

The Final Approval Hearings took place on July 10, July 14, and September 11, 2020.

## II. Settlement Approval

### A.   Settlement Terms

The benefits provided to the class are discussed at length, and ultimately approved, in the Court's Attorneys' Fees Memorandum Opinion. <u>See</u> Mem. Op., ECF No. 217. Here, it suffices to give only a brief summary of the settlement terms. Under the Settlement Agreement, all class members will receive enhanced disclosures regarding Genworth's future rate increases. Settlement Agreement, ECF No. 93-1 at 13, 43. And class members who opt-in to the Settlement will be able to choose among five new Special Election Options through which class members can elect to either stop paying premiums and receive enhanced benefits or to receive various combinations of reduced benefits in exchange for reduced premiums and cash damage awards. Settlement Agreement, ECF No. 93-1 at 13-14, 44-48.

4

**B.   Legal Standard**

Per Federal Rule of Civil Procedure 23(e), a class action may only be settled with the court's approval. Fed. R. Civ. P. 23(e). If the settlement proposal would bind all class members, a court may only approve the settlement proposal after it holds a hearing and subsequently finds that the settlement proposal is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2).

In determining whether a settlement is fair, reasonable, and adequate, the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Nevertheless, "[t]he primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158 (4th Cir. 1991).

In the Fourth Circuit, the Rule 23(e)(2) analysis has been condensed into the two-step _Jiffy Lube_ test which examines the fairness and adequacy of the settlement.  _In re The Mills Corp. Sec. Litig._, 265 F.R.D. 246, 254 (E.D. Va. 2009); _see also_ _In re Jiffy Lube Sec. Litig._, 927 F.2d 155, 158-59 (4th Cir. 1991).

## C.   Analysis

### i.   Fairness

Under the fairness prong of the _Jiffy Lube_ test, the court must assess the procedural fairness of the settlement negotiations.  _In re The Mills Corp. Sec. Litig._, 265 F.R.D. 246, 254 (E.D. Va. 2009).  The relevant factors to evaluate the fairness of the settlement negotiations are "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel."  _Brown v. Transurban USA, Inc._, 318 F.R.D. 560, 571 (E.D. Va. 2016).  Here, all four fairness factors point to a conclusion that the settlement negotiations in this case were procedurally fair.

First, the procedural posture of the case points towards the fairness of the negotiations.  Considering the procedural posture is one way for a court to assess whether there was any improper collusion among the parties.  _Brown v. Transurban USA, Inc._, 318 F.R.D. 560, 571 (E.D. Va. 2016).  In a case where, as here, the parties "vigorously" contested the motion to dismiss and engaged

in negotiations with the assistance of a professional mediator, there is less risk of any improper collusion. <u>Brown v. Transurban USA, Inc.</u>, 318 F.R.D. 560, 571 (E.D. Va. 2016); <u>see generally Skochin v. Genworth Life Ins. Co.</u>, 413 F. Supp. 3d 473 (E.D. Va. 2019) (Payne, J.) (ruling on a on a motion to dismiss following full briefing and two days of oral argument on the issue); July 10 Hearing Tr., ECF No. 60; July 12 Hearing Tr., ECF No. 61.

Second, the extent of the discovery taken also points towards the fairness of the negotiations. Considering the extent of discovery allows a court to "ensure that the case is well-enough developed for Class Counsel and Lead Plaintiffs alike to appreciate the full landscape of their case when agreeing to enter into this Settlement." <u>In re The Mills Corp. Sec. Litig.</u>, 265 F.R.D. 246, 254 (E.D. Va. 2009). Here, significant discovery had been conducted before the parties entered into settlement negotiations:

> Class discovery, which overlapped considerably with merits discovery and included the collection and review of hundreds of thousands of pages of documents obtained from Genworth and the completion of depositions of key Genworth representatives, was finished. When the Parties went to mediation, Plaintiffs' motion for class certification was drafted and file-ready.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT ("Final Approval Memorandum") at 3, ECF No. 136.

Third, the circumstances surrounding the negotiation point towards the procedural fairness of the negotiations. The purpose

of this factor is to ensure that the settlement was reached through arm's-length negotiations.  Brown v. Transurban USA, Inc., 318 F.R.D. at 572.  Here, the parties had an independent mediator oversee the negotiations.  See Decl. of Rodney A. Max, ECF No. 93-2.  Three formal negotiation sessions took place over approximately three weeks and the "parties also held several days of additional telephone conferences and email communications directly and indirectly through [the mediator] before, during, and after each of the in-person sessions."  See Decl. of Rodney A. Max ¶ 13-14, ECF No. 93-2.  These negotiations were "complex and highly adversarial," and "the advocacy on both sides of the case was outstanding."  See Decl. of Rodney A. Max ¶ 17, 25, ECF No. 93-2.

Finally, Class Counsel and their firms have extensive backgrounds in complex and class action litigation.  Ex.6 (Goldman Scarlato & Penny, P.C. Resume), ECF No. 93-6; Ex. 7 (Robbins Geller Rudman & Dowd, LLP Resume), ECF No. 93-7; Ex. 8 (Phelan Petty, PLC Resume), ECF No. 93-8; Ex. 9 (Berger Montague Resume), ECF No. 93-9.  The Court is satisfied that Class Counsel had sufficient experience to competently and fairly represent the interests of the class.  This factor, therefore, points to the fairness of the settlement.

Based on these four fairness factors, the Court finds that the Settlement Agreement was the product of an adversarial, arm's-length negotiation process conducted once discovery had reached a

stage where both parties had a sense of the strengths and weaknesses of their arguments. Accordingly, the Settlement Agreement was sufficiently "fair" under Federal Rule of Civil Procedure 23(e)(2).

### ii. Adequacy

Under the adequacy prong of the Jiffy Lube test, the court assesses the substantive adequacy of the settlement agreement. Brown v. Transurban USA, Inc., 318 F.R.D. 560, 571 (E.D. Va. 2016). The relevant factors to evaluate the adequacy of the settlement are "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." Brown v. Transurban USA, Inc., 318 F.R.D. 560, 573 (E.D. Va. 2016) (quoting In re Jiffy Lube Sec. Litig., 927 F.2d 155, 159 (4th Cir. 1991)). Here, all five factors suggest that the result achieved for the class and the other terms of the Settlement Agreement are adequate.

The first two adequacy factors together suggest that the settlement is substantively adequate. As the parties and their mediator note, the outcome at trial was uncertain given that both parties possessed "strong, non-frivolous arguments on the merits."

Decl. of Rodney A. Max ¶ 26, ECF No. 93-2; Final Approval Memorandum at 16, ECF No. 136. Moreover, Plaintiffs acknowledge that they would have had difficulties proving their case to a lay jury given the complicated issues at play. Final Approval Memorandum at 16, ECF No. 136. Proceeding to trial would have presented risks, including that the case would have been appealed to the Fourth Circuit based on the Court's prior rejection of Genworth's filed-rate doctrine arguments. Final Approval Memorandum at 16-17, ECF No. 136; see also Skochin v. Genworth Life Ins. Co., 413 F. Supp. 3d 473, 484 (E.D. Va. 2019) (Payne, J.).

The third factor similarly supports the conclusion that the settlement is adequate. Because of the risks Plaintiffs would face if the case continued to trial, and the costs of litigation generally, there was a real risk that "the length of time and expense required to resolve" these issues "and the risk of no recovery for the Class, would [have been] considerable." Final Approval Memorandum at 17, ECF No. 136. The Court shares that assessment.

The fourth factor also supports a finding that the Settlement Agreement is substantially adequate. Genworth has represented to the Court that it "has modeled its expectations of the impact of the Settlement in various scenarios, including if all Class Members" make a Special Election Option, and it concluded that

10

"[i]n all scenarios, the average reduction in future benefits that Genworth would pay exceeded the average reduction in future premiums that Genworth would collect if the Class Member maintained his or her current coverage." JOINT STATEMENT OF POSITION IN RESPONSE TO THE COURT'S JULY 21, 2020 ORDER at 20, ECF No. 203 (emphasis in original). In short, according to Genworth, "any combination of Special Election Options" elected by the Class Members is expected to improve Genworth's "financial condition relative to its existing liabilities." JOINT STATEMENT OF POSITION IN RESPONSE TO THE COURT'S JULY 21, 2020 ORDER at 20, ECF No. 203.

The fifth and final factor also points to the substantive adequacy of the Settlement. Of slightly more than 207,000 potential Class members, only 191 opted out of the Settlement and only 32 objected. PLAINTIFFS' REPLY IN SUPPORT OF (1) MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2) CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS TO THE NAMED PLAINTIFFS at 1, ECF No. 177. Moreover, none of the state insurance regulators notified of the proposed Settlement have objected to it. Attorneys' Fees Reply at 1, ECF No. 177. Courts generally treat relatively few objections and opt-outs as pointing to the adequacy of the settlement. See In re The Mills Corp. Sec. Litig., 265 F.R.D. 246, 257-58 (E.D. Va. 2009).

11

### III. CONCLUSION

Having measured the relief obtained in perspective of the claims being pursued, the Court concludes that the Settlement Agreement is fair, reasonable, and adequate in that it accords significant benefits to the class members. And, the Settlement Agreement is fair and adequate within the meaning of the test set by the Fourth Circuit in <u>Jiffy Lube</u>.

For all the foregoing reasons, the Motion for Final Approval (ECF No. 135) will be granted.

It is so ORDERED.

                                    /s/

                          Robert E. Payne
                          Senior United States District Judge


Richmond, Virginia
Date: November *12*, 2020