IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JEROME SKOCHIN,
et al.,

    Plaintiffs,

v.                           Civil Action No. 3:19-cv-49

GENWORTH FINANCIAL, INC.,
et al.,

    Defendants.

### MEMORANDUM OPINION

This matter is before the Court on CLASS COUNSEL'S MOTION FOR
AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS TO THE
NAMED PLAINTIFFS (ECF No. 142) ("Motion for Attorneys' Fees").
Class Counsel request that the Court enter an order (1) awarding
attorneys' fees in the amount of (a) $2,000,000 for the injunctive
relief achieved for the Settlement Class; (b) an additional
contingent payment of an amount between $10,000,000-$24,500,000
which represents 15% of the Cash Damages paid to the Settlement
Class; and (c) payment of litigation expenses in the amount of
$64,398.66 to be paid in accordance with the terms of the JOINT
STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE (ECF No. 137-
3); and (2) awarding service awards of $25,000 to each of the Named
Plaintiffs in connection with their representation of the
Settlement Class.  For the reasons set forth below, the Court (1)
AWARDS Class Counsel attorneys' fees amounting to $2 million and

15% of the Settlement Class' net Cash Damage awards with a cap of $24.5 million (for a total cap of $26.5 million); (2) GRANTS Class Counsel's request for expenses in the amount of $64,398.66; and (3) GRANTS Class Counsel's request for a $25,000 service award for each of the Named Plaintiffs.

## I. BACKGROUND

The facts of the broader merits case are set out at length in the Memorandum Opinion addressing objections to the Settlement. See Mem. Op., ECF No. 215 (overruling a series of objections to the final approval of the settlement).  The facts and procedural history of this case are, therefore, presumed known and discussed only to the extent necessary to aid in the analysis of the present motion.

### *The Settlement Process*

After litigating this case for approximately eight months, Class Counsel and Defendants began settlement negotiations under the supervision of independent mediator, Rodney A. Max of Upchurch Watson White & Max Mediation Group, Inc.  With the assistance of the independent mediator, the parties participated in three mediation sessions which were held over a roughly three-week period in the fall of 2019.

At the end of the final mediation session, the parties had not reached an agreement, but after several additional days of email and phone communications between the parties themselves and

between the parties and the mediator, the parties came to a preliminary agreement. Once the material provisions of the Settlement were decided, the negotiation moved to attorneys' fees, costs, and service awards for the Named Plaintiffs.

On October 29, 2019, the parties executed a Memorandum of Understanding outlining the material terms of a settlement. On October 30, 2019, Notice of Settlement was filed with the Court.

The Court granted preliminary approval of the Settlement on January 15, 2020 and directed notice to the Settlement Class. Potential class members were then given the option to opt-out or object to the Settlement.

Of the 32 objections initially submitted by potential class members, 13 unique objections[1] were directed specifically to the proposed award for attorneys' fees, the award for costs, and the service awards for the Named Plaintiffs. At the hearings on July 10, July 20, and September 11, 2020, objectors were afforded the opportunity to present their objections before the Court, and Class Counsel and the Defendants were then given time to respond to each of the objectors.

**The Settlement**

Under the terms of the proposed Settlement, the Settlement Class will receive (1) enhanced disclosures regarding Defendants'

---

[1] That is, ECF Nos. 116, 119, 120, 121, 122, 123, 127, 128, 133, 149, 158, 159, 161, and 172.

3

plans to raise premiums in the future and (2) the option to choose to keep their current policy as is or to convert the policy into one of five new "Special Election Options." Many of the options entitle class members to receive cash damage payments.

As a reward for securing these benefits for the Settlement Class, Class Counsel requests a flat fee of $2 million for their efforts in securing the enhanced disclosures by way of injunction and a "contingent fee" award of 15% of any cash damages given to class members with a cap of $24.5 million and a floor of $10 million. This fee award would be supplemented by an award to Class Counsel for reasonable expenses relating to the litigation ($64,398.66) and a service award for Named Plaintiffs ($25,000 each).

### The Special Election Options

The value of the five Special Election Options—which the parties attest are unique to the Settlement and have never before been offered to policyholders—is the key to understanding the value of the Settlement as defined by the parties. It is, therefore, necessary to review these five options in some detail.

Two of these Special Election Options are known as "Paid-up Benefit Options" or "Non-Forfeiture Options" ("PBO/NFOs") and three are "Reduced Benefit Options" ("RBOs").[2] In general, under

---

[2] For simplicity, all descriptions of benefits assume that the class members have not already begun receiving benefits under their policies. If they have, the value of the benefits that the class

4

the PBO/NFO options, a class member can stop paying premiums on their policy and still receive some benefits under the policy and/or Cash Damages.  In contrast, under an RBO option, the policy holder will continue to pay premiums, but those premiums will be lowered in exchange for other changes to the policy such as a reduced maximum daily benefit, a reduced benefit period, a reduced total lifetime benefit, the loss of inflation protection, etc.

Under the first PBO/NFO option, class members can elect to stop paying premiums entirely and receive enhanced benefits that are essentially double however much the policy holder has paid in premiums over the lifetime of the policy.  Under the second PBO/NFO option, class members can elect to stop paying premiums, receive less enhanced benefits than in Option 1 and also receive a cash damages award.

Under the three RBO options, class members can receive various combinations of reduced benefits in exchange for reduced premiums and cash damage awards.

To better illustrate the five Special Election Options, a chart created by the parties for a hypothetical class member is replicated below.  See JOINT STATEMENT OF POSITION IN RESPONSE TO THE COURT'S JULY 21, 2020 ORDER ("Joint Statement") at 11, ECF No. 203.

---

member has received will need to be subtracted from the benefits available to the class member under each Special Election Option.

|  | Current Benefits | Option 1: Enhanced Reduced Paid-Up Benefit | Option 2: Basic Reduced Paid-Up Benefit *Plus* Cash Payment | Option 3: Remove Inflation Benefit & Revert to Original Benefit Levels *Plus* Cash Payment | Option 4: Remove Inflation Benefit & 25% Reduction to Certain Maximum Benefits *Plus* Cash Payment | Option 5: Reduce Benefit Period from [Lifetime] to [x] Years & Reduce Lifetime & Daily Benefit Maximums, *Plus* Cash Payment |
|---|---|---|---|---|---|---|
| Cash Damage Payments | N/A | None | $[11,585.55] | $[7,744.88] | $[1,914.25] | $[6,245.96] |
| Maximum Daily Benefit | $[343.80] | $[343.80] | $[343.80] | $[150.00] | $[257.85] | $[257.85] |
| Inflation Benefit | [Compound [5]%] | [None] | [None] | [None] | [None] | [Compound [5]%] |
| Elimination Period | [100] Days | [100] Days | [100] Days | [100] Days | [100] Days | [100] Days |
| Benefit Period | [Unlimited] | [N/A] | [N/A] | [Unlimited] | [Unlimited] | [6 years] |
| Total Lifetime Benefit | [Unlimited] | $[72,409.66] | $[24,210.80] | [Unlimited] [**] | [Unlimited] [**] | $[564,691.50] [**] |
| Annual Premium | $[3,963.52] | Pay no further premiums | Pay no further premiums | $[2,027.30] | $[3,484.96] | $[2,402.03] |

Any attorneys' fees that are awarded (as well as costs and service awards) will be paid by Defendants independent of the benefits being provided to the class, and the Defendants will pay the requested attorneys' fees on a rolling basis based on which benefits the class members select. For example, if a class member selects the first RBO/NFO option, which has no cash damage award, Class Counsel would receive nothing in attorneys' fees for that class member. In contrast, if a class member selects the second RBO/NFO option and receives a cash damage award of $11,585.55, Defendants would pay Class Counsel 15% of $11,585.55 (i.e., $1,737.83) in attorneys' fees for that class member.

Putting this all together, under the proposed Settlement, if all 207,400 class members selected the first RBO/NFO option, the cash damages would total $0, but because of the floor, Class Counsel would, nevertheless, receive $10 million in attorneys' fees—in addition to the $2 million award that Class Counsel requests for the injunctive relief.  If all 207,400 class members selected the second RBO/NFO option and all class members received the average cash damage award of $11,585.55, the cash damages would total roughly $2.4 billion, but because of the cap, Class Counsel would only receive $24.5 million in "contingent" fees, not 15% of $2.4 billion—and again, this is in addition to the $2 million award that Class Counsel requests for the injunctive relief.

### The Value of the Settlement

The dollar value of the Settlement, at least as articulated to the Court, has been something of an evolving concept.  Class Counsel have repeatedly argued that the value of the Special Election Options is a hard-to-quantify function of: (1) the cash damages awards and (2) any enhanced benefit options.  See, e.g., MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS TO THE NAMED PLAINTIFFS ("Attorneys' Fees Memorandum") at 2, ECF No. 143.

However, in their most recent filing, Defendants report that based on their past policyholder experiences, the actuarially reasonable estimate of the settlement fund is a range of $80

million to $174 million.  DEFENDANTS' MEMORANDUM IN RESPONSE TO
THE COURT'S SEPTEMBER 16, 2020 ORDER at 2, ECF No. 213.  The
estimate is $130 million if the low and high scenarios are
eliminated.

The Court will treat this range as the parties' "final answer"
on the value of the Settlement.

### Attorneys' Fees Requested

At the hearing on September 11, 2020, Class Counsel indicated
that they would consent to having the $10 million floor removed.
Tr. at 50:1-10, Sept. 11, 2020, ECF No. 209.  However, in their
most recent filing, Class Counsel appears to argue against having
the floor removed.  CLASS COUNSEL'S SUPPLEMENTAL MEMORANDUM
PURSUANT TO THE COURT'S SEPTEMBER 14, 2020 ORDER at 9, ECF No.
211.  We will, therefore, assume for the purpose of our analysis
that Class Counsel is still requesting a floor of $10,000,000 on
their 15% contingency payment.

## II. LEGAL STANDARD

There are two basic approaches to calculating reasonable
attorneys' fees in a class action case: the "percentage of
recovery" or "percentage of the fund" method and the lodestar
method.  Brown v. Transurban USA, Inc., 318 F.R.D. 560, 575 (E.D.
Va. 2016).  Under the percentage of the fund method, fees are
awarded based on a percentage of the benefit secured for the
settlement class.  Brown, 318 F.R.D. at 575.  Under the lodestar

method, fees are awarded based on the value of the attorneys' time spent litigating the claims. Brown, 318 F.R.D. at 575. The Fourth Circuit has not explicitly mandated which method district courts should use. Brown, 318 F.R.D. at 575. A district court, therefore, has discretion to use either method. Grissom v. The Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008).

Nevertheless, over time, certain customs have developed, both in the Fourth Circuit and across the country; for example, the favored method for calculating attorneys' fees in common fund cases is the percentage of the fund method. See Brown, 318 F.R.D. at 575. And in a fee shifting case, the award is typically calculated using the lodestar method. See, e.g., Landwehr v. AOL, Inc., No. 1:11-cv-1014, 2013 WL 1897026, at *1 (E.D. Va. May 1, 2013). In any case, courts will typically employ one method as the primary calculation method and use the other method as a cross check on the reasonableness of the first. See, e.g., In re Genworth Financial Securities Litigation, 210 F. Supp. 3d 837, 843 (E.D. Va. 2016).

### Constructive Common Funds

In addition to the straight common-fund or straight fee shifting arrangement, there is also a hybrid situation known as a "constructive common fund" in which there is one fund for the claimants and one for the attorneys. In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litigation, 851 F. Supp.

2d 1040, 1072 (S.D. Tex. 2012); see also Clark v. Experian Info. Solutions, Inc., No. 8:00-1217-22, 2004 U.S. Dist. LEXIS 32063, at *37 (D.S.C. Apr. 22, 2004) (recognizing the concept of the constructive common fund).

In general, the percentage of the fund method is still appropriate for constructive fund cases with the lodestar used as a cross-check.  See In re Heartland, 851 F. Supp. 2d at 1072; see also Clark, 8:00-1217-22, 2004 U.S. Dist. LEXIS 32063, at *37 (applying the percentage of the fund method to a constructive fund case based on the absence of contrary case law).  "This approach is particularly appropriate when the value of the judgment or settlement is uncertain."  In re Heartland, 851 F. Supp. 2d at 1073.

**Lodestar Method**

Using the lodestar method, a court must first determine the lodestar figure by multiplying the number of reasonable hours expended by a reasonable rate.  Brown, 318 F.R.D. at 575.  The burden of proof is on the applicant to establish that the hourly rate(s) are reasonable.  Grissom, 549 F.3d at 321.

"Although the determination of a market rate in the legal profession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the [Supreme] Court has nonetheless emphasized that the market rate should guide the fee inquiry."  Grissom, 549 F.3d

at 321 (quoting <u>Plyler v. Evatt</u>, 902 F.2d 273, 277 (4th Cir. 2008)).  "[T]he community in which the court sits is the first place to look to in evaluating the prevailing market rate." <u>Grissom</u>, 549 F.3d at 321 (citing <u>Rum Creek Coal Sales, Inc. v. Caperton</u>, 31 F.3d 169, 179 (4th Cir. 1994)).  But an attorney's actual billing rate can also be considered.  <u>See</u> <u>Brown</u>, 318 F.R.D. at 575.

### *Reasonableness*

Once a figure has been calculated using the percentage of the fund or lodestar method, a court must determine if that result is reasonable.

Although the touchstone of the inquiry is always reasonableness, it is no longer clear exactly which factors the courts in this circuit should apply when assessing the reasonableness of proposed attorneys' fees in percentage of the fund cases.  In particular, there is considerable confusion regarding whether the proper test is the 12-factor <u>Johnson</u> test from the Fifth Circuit or the seven-factor <u>Gunter</u> test from the Third Circuit.

#### *The Johnson Factors*

In 1978, the Fourth Circuit adopted the 12-factor <u>Johnson</u> test from the Fifth Circuit.  <u>See</u> <u>Barber v. Kimbrell's, Inc.</u>, 577 F.2d 216, 226 n.28 (4th Cir. 1978).  The twelve <u>Johnson</u> factors are

> (1) the time and labor expended; (2) the novelty and
> difficulty of the questions raised; (3) the skill
> required to properly perform the legal services
> rendered; (4) the attorney's opportunity costs in
> pressing the instant litigation; (5) the customary fee
> for legal work; (6) the attorney's expectations at the
> outset of litigation; (7) the time limitations imposed
> by the client or circumstances; (8) the amount in
> controversy and the results obtained; (9) the
> experience, reputation[,] and ability of the attorney;
> (10) the undesirability of the case within the legal
> community in which the suit arose; (11) the nature and
> length of the professional relationship between
> attorney and client; and (12) attorneys' fees awards
> in similar cases.

Brown, 328 F.R.D. at 577 (quoting Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978)).  While a district court has discretion to determine the amount of the fee award, the court must provide detailed findings of fact to support the factors it considers.  Barber, 577 F.2d at 226; Grissom, 549 F.3d at 320.

However, the Court need not address all twelve Johnson factors independently because many of these considerations are subsumed in the calculation of the hours reasonably expended and the reasonableness of the hourly rate.  Brown, 328 F.R.D. at 577. Moreover, the result obtained for the class is often treated as the most important factor.  In re Genworth Financial Securities Litigation, 210 F. Supp. 3d 837, 843 (E.D. Va. 2016).

### The *Gunter* Factors

Under this test, the reasonableness factors are:  (1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys' involved; (3) the complexity and

duration of the case; (4) the risk of nonpayment; (5) awards in similar case; (6) objections; and (7) the amount of time devoted to the case by plaintiffs' counsel.  Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000).  As with the Johnson factors, not all factors are equally weighted in every case.  See In re Cendant Corp. PRIDES Litigation, 243 F.3d 722, 735 (3d Cir. 2001).

### Analysis

By the terms of Barber, the Johnson test was supposed to be used "in any case where such determination is necessary." Barber, 577 F.2d at 226 (emphasis added).  Courts in the Fifth Circuit, from which the Johnson test originated, apply the Johnson factors to attorneys' fees calculated under both the percentage of the fund and the lodestar method.  See, e.g., In re Heartland, 851 F. Supp. 2d at 1075 (applying the Johnson factors to a constructive common fund case); see also Waters v. International Precious Metals Corp., 190 F.3d 1291, 1294-1297 (11th Cir. 1999) (reviewing a district court's application of the Johnson factors in a percentage of the fund case).

Some courts in this circuit continue to apply the Johnson factors, but those courts are usually assessing the reasonableness of attorneys' fees that were primarily calculated through the lodestar method.  See, e.g., Brown, 318 F.R.D. at 577-578; but see Berry v. Wells Fargo & Co., No. 3:17-cv-304, 2020 U.S. Dist. LEXIS

143893, at *30-*32 (D.S.C. July 29, 2020) (applying the Johnson factors to a percentage of the fund case); Sims v. BB&T Corp., No. 1:15-cv-732, 2019 U.S. Dist. LEXIS 75839, 2019 WL 1993519, at *10-*12 (M.D.N.C. May 6, 2019) (same).

A significant number of courts have begun applying the seven-factor Gunter test for percentage of the fund cases on the grounds that the Barber/Johnson test is only meant to assess the reasonableness of attorneys' fees calculated using the lodestar method, see, e.g., Jones v. Dominion Resources Services, Inc., 601 F. Supp. 2d 756, 760 (S.D.W. Va. 2009)—or without justifying the use of the Gunter test and merely applying it, see, e.g., Domonoske v. Bank of Am., N.A., No. 5:09-cv-080, 2010 U.S. Dist. LEXIS 7242, at *60 (W.D. Va. Jan. 27, 2010).

Though the Third Circuit's seven-factor Gunter test seems to be better suited to assessing the reasonableness of percentage of the fund cases, see Clark v. Experian Info. Solutions, Inc., 8:00-1217-22, 2004 U.S. Dist. LEXIS 32063, at *61 (D.S.C. Apr. 22, 2004), the use of the Gunter test does not appear to have been blessed by the Fourth Circuit and may even be contrary to the Fourth Circuit's pronouncement of the Johnson test in Barber. See Barber, 577 F.2d at 226.

To address this ambiguity, some courts in this circuit have begun applying both tests to assess the reasonableness of attorneys' fees calculated using the percentage of the fund method.

See, e.g., In re Genworth Financial Securities Litigation, 210 F.
Supp. 3d 837, 843 (E.D. Va. 2016); Clark, No. 8:00-1217-22, 2004
U.S. Dist. LEXIS 32063, at *61.

In the absence of clear guidance from the Fourth Circuit,
this Court will do the same.

### Negotiated Fees

One final point of clarification is warranted as to the
reasonableness analysis in this circuit.   Class Counsel have
repeatedly attempted to argue that negotiated fees are favored and
"[b]ecause Genworth has agreed to pay this [attorneys'] fee, 'the
court need not inquire into the reasonableness . . . with the same
level of scrutiny as when the fee amount is litigated.'"   See,
e.g., Attorneys' Fees Memorandum at 12, ECF No. 143 (citation
omitted).

In the Fourth Circuit, the fact that the parties negotiated
a fee is not an explicit part of the reasonableness analysis under
either the Johnson or Gunter tests, though a court should still be
cognizant that "[a] request for attorneys' fees should not result
in a second major litigation" and "[i]deally, of course, litigants
will settle the amount of a fee." Hensley v. Eckerhart, 461 U.S.
424, 437 (1983).   That said, a court still has a duty to class
members to ensure that attorneys' fee awards are commensurate with
the amount of value actually going to the class members. Dominion
Res. Servs., 601 F. Supp. at 764-65; Berry v. LexisNexis Risk &

Info. Analytics Group, Inc., No. 3:11-cv-754, 2014 U.S. Dist. LEXIS
124415, at *28 (E.D. Va. Sept. 5, 2014).

### III. DISCUSSION

**A.  Attorneys' Fees**

Where, as here, there is one fund for class members and one
for attorneys' fees, the two pools can nevertheless be treated as
one "constructive" common fund, and the percentage method is still
appropriate.

### i.  Reasonableness Analysis

To determine whether the attorneys' fees requested by Class
Counsel are reasonable, the Court has considered the 12 Johnson
Factors and the seven Gunter factors.  The Court finds that the
following Johnson factors weigh in favor of the reasonableness of
the requested fee award: (1) the amount involved and the results
obtained; (2) the requisite skill required; (3) the experience,
reputation and ability of the attorneys involved; (4) whether the
fee is fixed or contingent.  The Court finds that the following
Johnson factors weigh against the reasonableness of the requested
fee award: (1) the time and labor expended; (2) the novelty and
difficulty of the questions; (3) awards in similar cases; and (4)
customary fee or rates.  The Court does not consider (1) the
preclusion of other employment, (2) any time limitations, (3) the
undesirability of the case, or (4) the nature and length of the
relationship with the client because Class Counsel has offered no

evidence that these factors are relevant to this case nor does the Court have any independent reason to think that these factors would affect its analysis.

Similarly, the Court finds that the following <u>Gunter</u> factors weigh in favor of the reasonableness of the requested fee award: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the fees requested by counsel; (3) the, quality, skill and efficiency of the attorneys involved; and (4) the risk of nonpayment.  The Court finds that the following <u>Gunter</u> factors weigh against the reasonableness of the requested fee award: (1) the complexity and duration of the litigation; (2) the amount of time devoted to the case by Class Counsel; and (3) awards in similar cases.

Balancing these factors—and heavily emphasizing the value provided to the class members—the Court finds that a fee award of $2,000,000 plus a 15% contingent fee with a cap of $24.5 million is reasonable so long as there is no $10 million floor for contingent attorneys' fees.

**a. Percentage-of-the-Fund Method**

The first step in a common fund or constructive common fund case is to ascertain the total value of the settlement.  Here, Defendants report that the actuarily reasonable estimate of the settlement fund based on Defendants' past policy holder

17

experiences is a range of $80 million to $174 million. DEFENDANTS' MEMORANDUM IN RESPONSE TO THE COURT'S SEPTEMBER 16, 2020 ORDER at 2, ECF No. 213. Class Counsel requests a $2 million fee for the injunctive relief provided and a 15% contingency fee of the total value of the settlement fund with a floor of $10 million and a cap of $24.5 million. This functionally amounts to a request for fees within a range of $12 million to $26.5 million. Combining Class Counsel's request for attorneys' fees with the Defendants' valuation of the settlement, the "constructive" common fund is in the range of $92 million to $200.5 million. Notwithstanding Class Counsel's emphasis on the reasonableness of a 15% fee, there are scenarios under which the percentage fee would not be 15%.

If the settlement fund were $174 million or higher, Class Counsel would only receive $26.5 million (combining the $2 million flat fee with the $24.5 million ceiling) which is roughly 13% of $200.5 million; however, if the settlement fund amounted to far more than $174 million, the ultimate cap on Class Counsel's fee award could result in a percentage fee well below 15%.

Similarly, if the settlement fund were $80 million, Class Counsel would receive $12 million ($10 million in contingency fees and $2 million in its flat fee). Thus, Class Counsel would functionally receive a percentage fee of 13% (using the constructive common fund $92 million).

In contrast, if the settlement fund ultimately amounted to a figure below $80 million, Class Counsel could potentially receive an amount well in excess of 15% of the fund. For example, if the settlement were $30 million dollars, Class Counsel would still receive $12 million because the floor would be triggered. In this hypothetical case, Class Counsel would functionally be receiving roughly 28.5% (using the constructive common fund of $42 million).

A percentage fee of 28.5% is not outside the realm of reasonable percentage fee awards, but the Court is concerned that the ultimate percentage fee awarded to Class Counsel will not be determined until the class members make their decision whether to maintain their current policies or to choose one of the five Special Election Options. If the parties' have significantly overestimated the class members' interest in the settlement options and the settlement fund were somehow much lower than expected, e.g. $10 million, Class Counsel would still receive $12 million under the attorneys' fee arrangement proposed by the parties—i.e., 54.5% of the constructive fund.

Importantly, the attorneys' fee award will be paid by Defendants from a separate fund that will not diminish class members' recovery.

With these parameters in mind, it is appropriate now to assess the reasonableness of Class Counsels' request using the Johnson and Gunter factors.

19

**b.  Size of the fund created and the number of persons benefitted.  Gunter factor.  Amount involved and result obtained.  Johnson factor.**

Class Counsel argue that they have secured two valuable benefits for the Settlement Class: (1) more complete and adequate disclosures regarding Defendants' future premium increases, and (2) five new never-before-seen Special Election Options to make up for the harm imposed on class members by the lack of disclosures. Attorneys' Fees Memorandum at 1-2, ECF No. 143; see infra Part I (describing the five Special Election Options).  Class Counsel describes the result as a "near complete recovery, if not more." Attorneys' Fees Memorandum at 4, ECF No. 143 (citations omitted).

Indeed, the Settlement does, in fact, provide significant recovery for the class members, many of whom could not replace their long-term care insurance at this point because of the high expense of starting such a policy later in life.  TAC ¶ 7, ECF No. 90.  Policyholders have the option to keep their current policies as is or to cut their losses and receive significant damage awards or a benefits award equal to double the premiums they have already paid into the policy.  See infra Part I.  Thus, this factor weighs in favor of the reasonableness of the requested fees.

**c.  The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel.  Gunter factor.**

Here, only 35 out of 207,400 class members even attempted to object to the settlement (i.e., well under 1% of the class).

20

Moreover, Class Counsel have reported a high-level of engagement and excitement in the class.  PLAINTIFFS' REPLY IN SUPPORT OF (1) MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2) CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS TO THE NAMED PLAINTIFFS ("Attorneys' Fees Reply") at 1, ECF No. 177.  Class Counsel has spoken to 4,000 class members who had questions about the Settlement.  Attorneys' Fees Reply at 1, ECF No. 177.  As of June 26, 2020, only 191 policyholders (less than 1% of the class) opted out of the settlement.  Attorneys' Fees Reply at 1, ECF No. 177.  Courts generally treat relatively few objections and opt-outs as pointing to the adequacy of the settlement.  See In re The Mills Corp. Sec. Litig., 265 F.R.D. 246, 257-58 (E.D. Va. 2009).  Additionally, none of the state insurance regulators notified of the proposed Settlement have objected to it.  Attorneys' Fees Reply at 1, ECF No. 177.  The Court finds that this factor points towards the reasonableness of the requested attorneys' fees.

> **d. The skill and efficiency of the attorneys involved. Gunter factor. The requisite skill required and the experience, reputation and ability of the attorneys. Johnson factor.**

Class Counsel submitted a list of all of their accomplishments representing local and national plaintiffs.  See Ex.'s 6-9, ECF Nos. 93-6-93-9.  The Court has no doubt that Class Counsel are competent, experienced, and skilled attorneys.  The Court finds

that this factor points towards the reasonableness of the requested
attorneys' fees.

> **e. The complexity and duration of the litigation and the
> amount of time devoted to the case by Class Counsel.
> <u>Gunter</u> factors. The time and labor expended, the novelty
> and difficulty of the questions, and the requisite skill
> required.  <u>Johnson</u> factors (last factor also listed in (d)
> above).**

Here, the legal question was not itself particularly
complicated, <u>cf.</u> <u>Kruger v. Novant Health, Inc.</u>, No. 1:14-cv-208,
2016 U.S. Dist. LEXIS 193107, 2016 WL 6769066, *2 (M.D.N.C. Sept.
29, 2016) (noting that enhanced fee awards are common in a "complex
ERISA 401(k) fee case such as this matter"), but Class Counsel did
complete "core" discovery before finalizing settlement
negotiations. Attorneys' Fees Memorandum at 2, ECF No. 143. This
included a review of roughly 200,000 pages of documents, deposing
two key defense witnesses, preparing the Named Plaintiffs for their
depositions, and requesting and responding to interrogatories.
Attorneys' Fees Reply ¶ 10, ECF No. 177. Given that the time and
effort counsel expended were fairly typical for a class action
lawsuit, the Court finds that this factor slightly weighs against
the reasonableness of the high attorneys' fees requested.

> **f. The risk of nonpayment. <u>Gunter</u> factor. Whether fee is fixed
> or contingent. <u>Johnson</u> factor.**

Here, the risk of non-payment was very real, <u>see</u> DECL. OF
RODNEY A. MAX ¶ 17, ECF No. 93-2 ("After reviewing written
materials the parties submitted to me, and discussing the same

with them separately prior to the first mediation session, I believed that the negotiations would be difficult and adversarial and that all involved would hold strong to their convictions that they had the better legal and substantive arguments, and that a resolution without further litigation or trial was by no means certain."); however, the risk of nonpayment was also substantially reduced fairly quickly. See DECL. OF RODNEY A. MAX ¶ 11, 23, ECF No. 93-2 (noting that parties first contacted him regarding mediation on August 1, 2019 and the Memorandum of Understanding was drafted on October 29, 2019). Settlement negotiations began roughly eight months into the case. DECL. OF RODNEY A. MAX ¶ 11, ECF No. 93-2. And the parties had executed a Memorandum of Understanding by October 29, 2019. DECL. OF RODNEY A. MAX ¶ 23, ECF No. 93-2. The Court finds that this factor weighs slightly in favor of the reasonableness of the requested fee.

g. **Awards in similar cases. Gunter and Johnson factor. Customary fee or rates. Johnson factor.**

Class Counsel argue that a 15% fee is a perfectly normal percentage fee in this circuit. They are correct on that point. See In re Genworth Financial Securities Litigation, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016) (awarding a percentage fee of 28% and noting that courts have found percentage fess of 25-33.3% to be reasonable). However, the Court is concerned that, if the parties have misjudged class members' interest in the settlement, the

percentage fee may be well above 15%, and it will appear that Class Counsel have received a windfall payment for a settlement that was not perceived as useful by the class.

The risk of a windfall payment where there is a floor of $12 million weighs against the reasonableness of the settlement. Removing the $10 million floor would ensure that the attorneys are not receiving a significant award for a settlement that the class does not find particularly useful. If the $10 million floor were removed, the Court believes that this factor would weigh in favor of the reasonableness of the fee.

### h. Lodestar Cross-Check

Under Class Counsel's most-recent hours report calculated at the local Richmond rates, the lodestar figure is $2,926,882.45.[3]

That lodestar figure would be 0.68 times the requested flat fee of $2 million, 4.1 times the requested floor of $12 million (including both the $2 million flat fee and the $10 million contingency fee floor), and 9.05 times the requested ceiling of $26.5 million (including both the $2 million flat fee and the $24.5 million contingency flat ceiling).[4]

---

[3] Ex. E at 2, ECF No. 212-12. That lodestar figures reflects 6,233.5 hours of work. Ex A. ("Goldman Scarlato & Penny Hours") at 2, ECF No. 212-8 (2,932.55); Ex. B ("Robbins Geller Rudman & Dowd Hours") at 2, ECF No. 212-9 (2,786.40); Ex. C ("Phelan Petty Hours") at 2, ECF No. 212-10 (239.45); Ex. D ("Berger Montague Hours") at 2, ECF No.212-11 (275.10).

[4] Even at Class Counsel's "Actual Billing Rages," the multiplier would still be 8.05. See Ex. E at 2, ECF No. 212-12.

The first two multipliers are clearly within the range of reasonable awards applied in this circuit. See Jones v. Dominion Res. Servs., 601 F. Supp. 2d 756, 766 (S.D.W. Va. 2009)(noting that courts treat 2-4.5 as a reasonable range for attorneys' fees); see also Hooker v. Sirius XM Radio, Inc., No. 4:13—cv-003, 2017 U.S. Dist. LEXIS 201809, at *24 (E.D. Va. May 11, 2017) (describing the national average multiplier as 1.81 and a Fourth Circuit average of 2.43). The latter is not, though it is not outside of the realm of reasonableness. See, e.g., Stop & Shop Supermarket Co. v. SmithKline Beecham Corp., No. CIV.A. 03-4578, 2005 WL 1213926, at *18 (E.D. Pa. May 19, 2005) (awarding a multiplier of 15.6 where the percentage fee award of 20% was reasonable and no member of the sophisticated settlement class objected to the proposed attorneys' fees).

Two factors persuade the Court that a potential lodestar multiplier of 9.05 is not unreasonable in this case. First, Class Counsel would only receive $26.5 million if enough class members choose one of the five Special Election Options negotiated by Class Counsel (rather than keep their policy as is) and also select Special Election Options with a cash damages component. In that case, the settlement fund would have to be valued at roughly $163.5 million or higher (at which point the 15% contingency fee ceiling would be triggered since $24.5 million is roughly 15% of $163.5 million). That is a sizeable award that can only be achieved if

class members perceive the settlement negotiated by Class Counsel as more valuable than the pre-litigation status quo.  Second, the lodestar is only used as a cross-check rather than the primary method of assessing the reasonableness of the attorneys' fees in this case.  Because the Court has found the 15% fee reasonable in light of the significant value that Class Counsel has secured for the class, the lodestar should not preclude recovery.  See Dominion Res. Servs., 601 F. Supp. 2d at 766 ("[T]he cross-check results do not 'supplant the court's detailed inquiry into the attorneys' skill and efficiency in recovering the settlement.'") (citation omitted).

**B.    Costs**

Under Rule 23(h), a court may award reasonable non-taxable costs to Class Counsel.  Fed. R. Civ. P. 23(h).  Reasonable costs can include, among other things, costs related to computer legal research, court reporting, court filing fees, deposition transcripts, stenographer fees, travel, document duplication, expert witness fees, photocopying, postal fees, and mediation fees.  In re Microstrategy, Inc. Securities Litigation, 172 F. Supp. 2d 778, 791 (E.D. Va. 2001); Berry v. Wells Fargo & Co., No. 3:17-cv-304, 2020 U.S. Dist. LEXIS 143893, at *42 (D.S.C. July 29, 2020).

Here, the requested fees are for court fees; process servers; transportation, hotels, and meals; court hearing transcripts;

deposition reporting, transcripts, and videography; photocopies; printing; legal and financial research; and mediation fees. Goldman Scarlato Decl. ¶¶ 5-6, ECF No. 144; Robbins Geller Decl. ¶¶ 5-6, ECF No. 145; Berger Montague Decl. ¶ 5-6, ECF No. 147; Phelan Petty Decl. ¶¶ 5-6, ECF No. 146.   These expenses will be paid directly by the Defendants.   Attorneys' Fees Memorandum at 19, ECF No. 143.

The Court finds these expenses to be legitimate and the amounts to be reasonable given the complexity of the case, the time and effort expended by Class Counsel, and the results achieved.   See In re Microstrategy, 172 F. Supp. 2d at 791.

## C.   Service Awards

Trial courts will typically authorize service awards to class representatives for the time and effort they expended for the benefit of the class.   Dominion Res. Servs., 601 F. Supp. 2d at 767.   Service awards are "'intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.'"   Berry v. Schulman, 807 F.3d 600, 613 (4th Cir. 2015) (citing Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958-59 (9th Cir. 2009)).

Here, Named Plaintiffs request $25,000 each which will be paid directly by Defendants.   Attorneys' Fees Memorandum at 19,

ECF No. 143.  Named Plaintiffs report that they spent time helping Class Counsel draft the complaint; working with Class Counsel to respond to interrogatories—including responding to questions regarding Named Plaintiffs' financial and medical circumstances; preparing for depositions; and sitting for depositions.  Skochin Decl. ¶¶ 3-9, ECF No. 138; J. Skochin Decl. ¶¶ 3-9, ECF No. 139; Huber Decl. ¶¶ 3-9, ECF No. 140.

Courts in this circuit have both accepted and rejected service awards of $25,000 based on the specifics of the case involved. Compare Stone v. SRA Int'l, Inc., No. 2:14-cv-209, 2015 U.S. Dist. LEXIS 75839, 2015 WL 1274871, at *17 (E.D. Va. 2015) (denying request for $25,000 for class representatives who prepped for and participated in a deposition; attended a mediation; and signed a broader release of claims than other class members) with Kruger v. Novant Health, Inc., No. 1:14-cv-208, 2016 U.S. Dist. LEXIS 193107, at *17-*18. (M.D.N.C. Sept. 29, 2016) (approving request for $25,000 for class representatives in an ERISA case where there was a substantial reputational risk in bringing the claim).

The Court finds a $25,000 Service Award to be reasonable in this case given the time and effort expended by Named Plaintiffs and in perspective of the fact that their efforts helped to secure a settlement that is highly beneficial to the class.

**D.    Objections**

A number of objections were lodged as to the amount of the fees, costs, and service awards requested.  <u>See</u> ECF Nos. 116, 119, 120, 121, 122, 123, 127, 128, 133, 149, 158, 159, 161, and 172. Those objections are overruled for the same reasons that the fees, costs, and service awards were approved.  There is, thus, no need to discuss those objections separately.

**CONCLUSION**

For the foregoing reasons, Class Counsel's Motion for Attorneys' Fees (ECF No. 143) will be GRANTED to the extent that Class Counsel will be awarded attorneys' fees amounting to $2 million and 15% of the Settlement Class' net damage awards with a cap of $24.5 million; (2) Class Counsel will be awarded expenses in the amount of $64,398.66; and (3) Named Plaintiffs will be awarded $25,000 each for their service.


It is so ORDERED.

                                    /s/      REP
                              _____
                              Robert E. Payne
                              Senior United States District Judge

Richmond, Virginia
Date: November 13, 2020